AMERICAN LOAN & TRUST Co. *et al. vs.* JAMES S. BILLINGS *et al.*

Argued June 19, 1894.  Affirmed July 13, 1894.

No. 8726.

**A power given as security is irrevocable.**

> A power of attorney executed by A., empowering B. to sell and convey real and personal estate and pay the proceeds to C., to be applied in payment of a debt from A. to C. existing or contemplated at the time of its execution, and executed by A. and accepted by C. as security for such debt, cannot be revoked by A.

**Such power creates a lien.**

> Such an instrument creates a lien on the property which the courts may enforce.

Appeal by defendants, James Billings and Page Morris, his assignee in insolvency, from an order of the District Court of St. Louis County, *Charles L. Lewis*, J., made December 29, 1893, overruling their demurrer to the complaint.

On June 22, 1892, James Billings was entitled to one fifth of three hundred and twenty acres of land in Section eight (8) and to one sixth of eighty acres in Section eighteen (18), T. 58, R. 16, on Mesaba Range in St. Louis County. The legal title to all this land stood in the name of William McKinley of Duluth who held it in trust for Horace Williston, James Charnley, John McKinley, James Billings and himself. On that day Billings was also entitled to one sixth interest in the capital stock of the McKinley Iron Company, a mining corporation. This stock was also in William McKinley's hands and

in his name on the stock registry of the corporation. Billings was on that day indebted to the American Loan and Trust Company over $100,000 for money borrowed. To secure his indebtedness to it, he and wife on that day made and delivered to William McKinley a power of attorney authorizing him to sell and convey his interest in the lands and stock and in any part or portion thereof for such prices as he should deem proper and pay the proceeds to the American Loan and Trust Company upon his debt to it. The instrument recites that it is given for the purpose of securing the debt and also future advances, and that it is irrevocable.

On July 14, 1893, Billings executed and caused to be recorded an instrument purporting to revoke this power. He afterwards made a general assignment to Page Morris of all his nonexempt property in trust for his creditors. The American Loan and Trust Company had meantime guaranteed and transferred to the First National Bank of Vassar, Mich., a part of the promissory notes it held against Billings. This action was brought by the Trust Company, the Bank and William McKinley against Billings and wife, Page Morris, his assignee, and the other joint owners of the land and stock to have the revocation adjudged invalid, and to obtain a sale of Billings' interest in the property and application of the proceeds upon the indebtedness held by plaintiffs. Their claim being that as the legal title was in William McKinley, the power of attorney made him a trustee for the Trust Company and the Bank, and the debts held by them a lien on the property. Billings and Morris demurred to the complaint, but were overruled and they appeal.

*White & Hewit, J. L. Washburn*, and *Edward Fuller*, for appellants.

The finally vital question involved is, had Billings the right to revoke the authority given by the power of attorney? The general rule is, that the principal may revoke the authority of his agent at his mere pleasure. Although the principal has expressly stipulated that the power shall be irrevocable, still, if the agent has no interest in its execution, and there is no valid consideration for the execution of such power, it is a mere *nudum pactum* and is deemed in law to be revocable at the will of the constituent, upon the principle that he who alone has an interest in the execution of an act is also entitled to control it. Where an authority or power is given for

a valuable consideration, or is coupled with an interest, or is part of a security for the payment of money, or the performance of some other lawful act, it is irrevocable whether so expressed upon its face or not. *Frink* v. *Roe*, 70 Cal. 296; *Hunt* v. *Rousmanier*, 8 Wheat. 174.

This was not an irrevocable power given as security for a payment as contemplated by the exception to the rule. *Blackstone* v. *Buttermore*, 53 Pa. St. 266; *Bonney* v. *Smith*, 17 Ill. 531.

*Cash, Williams & Chester, Billson, Congdon & Dickinson*, and *Walter Ayers*, for respondent.

The power of sale having been given by Billings for the benefit of the Trust Company as security for the already existing debt of the former to the latter, and having been accepted by the beneficiary, it became irrevocable, even though there had been no further advances made on the faith of such security. *Simonton* v. *First National Bank*, 24 Minn. 216; *Jefferson* v. *Asch*, 53 Minn. 446; *Acton* v. *Woodgate*, 2 Myl. & K. 492; *Kirwin* v. *Daniel*, 5 Hare, 493; *Harland* v. *Binks*, 15 Q. B. 713; *Siggers* v. *Evans*, 5 Ell. & Bl. 367; *Oldham* v. *Oldham*, 3 Eq. Cas. 404.

Even the united action of the donor of the power and of the donee or trustee would be ineffectual to impair the vested rights of the beneficiary. *Ewing* v. *Warner*, 47 Minn. 446.

The power will be regarded in equity as a power in trust creating a right in the beneficiary and a duty in the trustee imperative in its nature and which will be enforced and protected. 1 Perry, Trusts, 248, et seq.; Bispham, Pr. Eq. 77; 2 Sugden, Powers, 173, 174; 2 Pomeroy, Eq. Jur. 835, 1002; Story, Eq. Jur. 1061, 1062; 2 Washburn, Real Prop. 325; *Delany* v. *McCormack*, 88 N. Y. 174; *Smith* v. *Floyd*, 140 N. Y. 337; *Matter of Gantert*, 136 N. Y. 106.

GILFILLAN, C. J. Appeal from an order overruling a demurrer to the complaint. The complaint alleges in brief that the defendant Billings was the owner in fee of an undivided one-fifth of real estate therein described, the title to which was in William McKinley, in trust for the use and benefit of himself, Billings, and three others, and was also owner of and entitled to a one-sixth interest in the

stock of a certain corporation, and was indebted to plaintiff in large sums of money, and desirous of obtaining from it further advances, and was desirous of securing plaintiff on said indebtedness and future advances, and the plaintiff was desirous of obtaining such security, and at its instance and request he and his wife executed a power of attorney to William McKinley, which was delivered to plaintiff, and accepted by it as such security. The power, of which a copy is attached to the complaint, recites that Billings is indebted to plaintiff, and expects to make future loans from it, and that he is desirous that his interest in his said real estate and stock (which are described in the power) shall be disposed of, and the proceeds thereof applied to payment of such indebtedness due and to become due; wherefore, in consideration of the premises, and of one dollar to the grantors paid, they constitute said McKinley their attorney, and in their name to sell and convey the real estate for such prices and on such terms as to him shall seem meet, to accept and receive and receipt for said stock, and sell and assign the same for such prices as to him shall seem meet, and pay the proceeds of any sales to plaintiff, to be applied on such indebtedness due and to become due. It declares, in terms, that it is given for the purpose of securing future advances as well as advances theretofore made by plaintiff to Billings, and that it is irrevocable. This power was duly recorded.

Afterwards he caused to be recorded an instrument executed by him, purporting to revoke said power.

The only question raised by the demurrer is, was the power of attorney revocable by act of the grantors? To the general rule that a power of attorney may be revoked by the party who makes it there are certain recognized and well-established exceptions:

First. Where, it is executed as security for the payment of money, or for the performance of any act which is deemed valuable. *Hunt* v. *Rousmanier*, 8 Wheat. 174.

Second. Where it is coupled with an interest in the subject of it, in which case even the death of the grantor does not revoke it.

Third. Where it is a valid power under the statute. 1878 G. S. ch. 44.

This power is very near to coming within each of the second and third of these exceptions; and also, the legal title to the land being

in the attorney, it comes very near to creating a valid trust under the statute.

But, as we have no doubt that it is valid as a security, and therefore irrevocable by act of the grantors, we need not consider it with reference to those two exceptions, nor whether it creates a trust under the statute.

It is in no case necessary, in order to sustain a security, that it be vested in the person for whose benefit it is created. It may be vested in another, and, if he accepts, his relation is, in law, that of a trustee, whatever name the instrument creating the security may give him. To sustain a security it is not necessary there should be a new consideration. The existence of the debt secured is sufficient.

The grantors are not the only parties to this instrument. The donee of the power, as soon as he accepted, became a party, and so the beneficiary, the plaintiff, on accepting it as its security, became a party to and interested in it as fully as a mortgagee in an ordinary mortgage becomes a party by accepting. While it remained inchoate, a mere intention to create the security,—that is, before acceptance,—it was in the power of the grantors to withhold it. But, after the beneficiary became interested by acceptance, it was a perfected security, and they could not recall it.

The real intention of such an instrument is to pledge the property for the payment of the debt, not to pledge merely the power to sell it. The intention is that the property shall be sold, if need be, and the proceeds applied on the debt. And as the law regards the substance, and not the mere form, of contracts,—the ultimate purpose the parties have in view, rather than the manner agreed on for effecting the purpose,—such a contract creates a lien on the property which the courts may enforce and will enforce if for any reason the person appointed cannot or will not do so. And so far, certainly, as concerns the real estate, it would be better for all parties, in order to avoid complication, to seek enforcement through the courts. The death of the grantor or grantee of the power might prevent enforcement in any other way; but the death of any or all the parties would not affect the lien.

Order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 998.)