McKellop et ux. v. Dewitz et al.

---

McKELLOP *et ux*. v. DEWITZ *et al*.

No. 3561.    Opinion Filed May 12, 1914.

(140 Pac. 1161.)

1.    BROKERS—Right to Terminate Relation. A written contract wherein the owner of real estate, platted into lots and blocks as an addition to a city, designates the other party to the contract as his agent to sell such lots at a specified price, and agrees to pay the agent a named per cent. of the proceeds of sale as his compensation, and also to allow him a definite interest in the lots remaining after a sufficient number have been disposed of to discharge a mortgage debt against the property, and wherein the agent agrees to pay all the expenses incurred in selling the lots, and also one-half of the mortgage indebtedness against the same—held, that such contract is not ''a power coupled with an interest,'' and that it creates between the parties the relation of principal and agent, and the relationship may be terminated at the will of the principal.

2.    PRINCIPAL AND AGENT — Right to Terminate Relation — A Power Coupled With an Interest. A contract of agency is revocable at the will of the principal, unless the contract constitutes ''a power coupled with an interest.''

3.    PRINCIPAL AND AGENT—Agency—''Power Coupled With an Interest.'' The phrase ''a power coupled with an interest'' means a writing creating in, conveying to, or vesting in the agent an interest or estate in the thing or property which is the subject

of the agency, as distinguished from the proceeds or result of the exercise of the agency. The estate or interest vested or created in the agent must be such as the agent could convey in his own name in the event of the death of the principal.

4.    SAME—Revocation of Agency—Damages. The principal, having the power to revoke an agency, is liable in damages if, by the revocation, substantial injury is sustained by the agent.

(Syllabus by Galbraith, C.)

*Error from District Court, Muskogee County; R. P. de Graffenried, Judge.*

Action by A. A. McKellop and wife against P. W. H. Dewitz and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded, with directions.

*P. J. Hurley, Hainer & Martin,* and *W. J. Gregg,* for plaintiffs in error.

*Geo. A. Murphy* and *W. W. Noffsinger,* for defendants in error.

Opinion by GALBRAITH, C. The one question presented by this appeal is whether or not a written contract created an agency in the defendant in error, P. W. H. Dewitz, coupled with an interest in the property therein described. The contract is as follows:

"This agreement, made and entered into this 18th day of January, 1909, by and between A. A. McKellop and Myrtle McKellop, his wife, of Muskogee, Oklahoma, parties of the first part, and P. W. H. Dewitz, of the same place, party of the second part, witnesseth: That, whereas, the said parties of the first part are the owners of the following described real property, situate in the county of Muskogee, state of Oklahoma, to wit: The southeast quarter of the northeast quarter of section thirty-six (36) township fifteen (15) north, range eighteen (18) east, known as Cream Ridge addition to the city of Muskogee, according to the plat thereof on file in the office of the register of deeds of Muskogee county, the legal title to which is now held in trust by the Oklahoma Trust Company, of Muskogee, Oklahoma, for the parties of the first part. Now, therefore, in consideration of the mutual covenants and considerations hereinafter set out, it is agreed as follows: The said parties of the first part hereby give and grant to the party of the second part, the

sole and exclusive privilege of selling the lots in said addition. Said party of the second part may sell said lots for such price as he deems proper, but not for less than one hundred dollars for inside lots of twenty-five foot frontage, and not less than one hundred and twenty-five dollars for corner lots of twenty-five foot frontage, unless otherwise agreed upon by the parties hereto. Such sales may be made for cash or in installments. If installments, the first payment shall not be less than ten dollars in cash, the balance of the purchase price to be in notes payable at the rate of $5.00 per month. Such first payment of $10.00 may be retained by party of the second part or his agents, as commission. Upon a sale of any lot, the Oklahoma Trust Company shall execute with the purchaser a proper contract evidencing such sale, and upon full payment being made, shall execute a good and sufficient warranty deed conveying such lot to the purchaser, free from any incumbrance. In the event of failure of any such purchaser to complete his payment, his contract and the amount thereon shall be forfeited, and said second party shall have the exclusive privilege of reselling the lot or lots upon the same terms as the original sale. All moneys paid by the purchaser of such lots shall be paid to the said Oklahoma Trust Company, which company shall, in turn, immediately pay two-fifths of such money to the party of the second part and three-fifths to the parties of the first part. The party of the second part hereby agrees and binds himself to use his best efforts to sell all of the level lots in said addition as soon as practicable, and to give his time and attention to the work of selling such lots. Each party to this agreement shall have the right at any time to examine all papers and records in the hands of said Oklahoma Trust Company, relating to the sale of said lots. All the expenses of placing said lots on the market and of selling the same, including the cost of grading streets and alleys, printing abstracts and all other necessary expenses, shall be borne, one-half by the parties of the first part and one-half by the party of the second part. It is also agreed that one-half of the amount necessary to pay and discharge a certain note and mortgage of $3,300, bearing ten per cent. interest, held by R. B. Beard, of Muskogee, shall be paid one-half by the parties of the first part and one-half by the party of the second part. This agreement shall extend to and be binding upon the heirs, successors, representatives and assigns of the parties hereto. In testimony whereof, the parties to this instrument have executed the same in duplicate the day and year first above written."

On the 20th day of January, 1909, the McKellops, Dewitz, and Beard joined in a contract with the Oklahoma Trust Company by which the legal title in the premises was conveyed to it to be held in trust to secure the mortgage to Beard and providing for the payment of the mortgage out of the proceeds of the sale of the lots.

The plaintiffs in error, A. McKellop and wife, elected to revoke the agency created by the written contract in the defendant in error P. W. H. Dewitz, and on January 27, 1910, instituted this action seeking to have the title to the land described in the contract quieted in them as against the defendants in error P. W. H. Dewitz and the Oklahoma Trust Company. It was charged in the petition that the defendant Dewitz had defaulted in the performance of his part of the contract in this: That he had failed and refused to pay one-half of the annual interest due on the Beard mortgage for the year 1909, and that he had failed to give his whole time to the sale and disposition of the lots, and in fact had abandoned effort to sell same and had declared that he would not attempt to make further sales thereof. The prayer was that the Oklahoma Trust Company be decreed to have no title in the land except the naked legal title, and that it be required to convey to the plaintiffs this property by good and sufficient warranty deed, and that the defendant P. W. H. Dewitz be decreed to have no right, title, or interest in and to the land, and that he be required to give an accounting of whatever sums that it be found he received from the sale of the lots, and that plaintiffs have credit for the same on the mortgage held by R. B. Beard, as provided in the written contract.

The defendant P. W. H. Dewitz answered by general denial, and by way of affirmative defense admitted the entering into of the contract hereinabove set out, and averred that by the terms thereof he was created agent of the plaintiffs for the sale of the property described in the contract, and that he also agreed to pay one-half of the $3,300 mortgage against said property held by R. B. Beard, and that he agreed to devote his time and best efforts to the sale of said lots. He also admitted the execution of the contract of January 20, 1909, with the Okla-

homa Trust Company, and alleged that there had been no breach of the contract on his part, and that he had fully performed each and every condition as he had agreed to perform it, and that he was entitled to the benefits and profits arising from the contract, and was entitled to and asked a specific performance of the same, and prayed that the plaintiffs take nothing by the action, and that he have judgment for costs.

The cause was tried to the court, and on March 27, 1911, a decree entered to the effect:

"That the contract of agency sought to be canceled between the parties hereto creates an agency in the defendant P. W. H. Dewitz, coupled with an interest in the property therein described, and that the said defendant P. W. H. Dewitz paid a valuable consideration for said contract of agency, and that the same is irrevocable, and that from the testimony no cause exists for the termination of said contract, and that the mortgage held by the defendant R. B. Beard is in force and effect, and the interest has been paid thereon to January 11, 1911."

The decree further dismissed the suit and rendered judgment against the plaintiffs for costs. A motion for new trial was overruled, and the plaintiffs perfected an appeal to this court.

· The assignments of error present the one question as to whether or not the agency created in Dewitz by the written contract was "an agency coupled with an interest," and not subject to be revoked by the McKellops at their pleasure. As to this character of agency, the rule is announced by Mr. Mechem in his work on Agency, par. 204:

﹔ "The authority of the agent to represent the principal depends upon the will and license of the latter. It is the act of the principal which creates the authority; it is for his benefit and to subserve his purposes that it is called into being; and, unless the agent has acquired with the authority an interest in the subject-matter, it is in the principal's interest alone that the authority is to be exercised. The agent obviously, except in the instance mentioned, can have no right to insist upon a further execution of the authority if the principal himself desires it to terminate. It is the general rule of law, therefore, that as between the agent and his principal, the authority of the agent may be revoked by the principal at his will at any time, and with or with-

out good reason therefor, except in those cases where the authority is coupled with a sufficient interest in the agent."

And again the same authority says in paragraph 205:

"What interest in the agent will be sufficient to render the authority irrevocable is not easy of exact and comprehensive definition. Certain it is, however, that it is not any interest which will suffice. But it must be an interest or estate in the thing itself or in the property which is the subject of the power; the power and the estate must be united and coexistent, and generally of such a nature that the power would survive the principal in such a way as to be capable of execution in the agent's name after the death of the principal."

And again in paragraph 207 the same authority says:

"Thus, where one is given authority to sell the lands or other property of another, and is to have a certain commission or share out of the proceeds for making the sale, the authority may be revoked at the will of the principal, even though in terms it was declared to be exclusive or irrevocable. * * * The interest in the commissions to be earned and in the moneys expended in endeavoring to carry out the agency is not sufficient to prevent revocation."

Chief Justice Marshall, in discussing the meaning of the expression "a power coupled with an interest," said:

"Is it an interest * * * to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear that the interest which can protect a power, after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be ingrafted on an estate in the thing. The words themselves would seem to import this meaning. 'A power coupled with an interest' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest' an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and therefore cannot, in accurate law language, be said to be 'coupled' with it. But the substantial basis of the opinion of the court on this point is found in the legal reason of the principle. The interest or title in the thing, being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. The act of the substitute, there-

fore, which, in such a case, is the act of the principal, to be legally effectual, must be in his name, must be such an act as the principal himself would be capable of performing, and which would be valid, if performed by him. Such a power necessarily ceases with the life of the person making it. But if the interest or estate passes_with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name. The estate, being in him, passes from him by a conveyance in his own name. He is no longer a substitute, acting in the place and name of another, but is a principal, acting in his own name. in pursuance of powers which limit his estate. The legal rea son which. limits a power to the life of the person giving it ex- ists no longer, and the rule ceases with the reason on which it is founded. The intention of the instrument may be effected without violating any legal principle." (*Hunt v. Rousmanier,* 8 Wheat. 204, 5 L. Ed. 589.)

A similar contract to that involved in the instant case was be- fore the court in *Kimmell v. Powers,* 19 Okla. 339, 91 Pac. 687, and it was held by the Supreme Court of Oklahoma Territory that such a contract created the relation of principal and agent, and did not vest the agent with any interest in the real estate itself.

The contract before the court in *Schilling v. Moore,* 34 Okla. 155, 125 Pac. 487, was analogous in some respects to that under consideration in the instant case, and it was held that the contract in that case constituted a contract of employment and conveyed no interest in the real estate, and that it was not a power coupled with an interest, and that, in order to be such, the instrument must convey or create in the agent an interest in the property upon which the power is to operate, and that merely giving him an interest in the exercise of the power was not sufficient. See, also, *Taylor v. Burns,* 8 Ariz. 463, 76 Pac. 623; *Id.,* 203 U. S. 120, 27 Sup. Ct. 40, 51 L. Ed. 116; *Title Insurance & Trust Co. v. Grider,* 152 Cal. 746, 94 Pac. 601; *Hicks v. Post,* 154 Cal. 22, 96 Pac. 878.

A careful consideration of the contract clearly shows that no interest in the real estate was conveyed by it to the agent, Dewitz. The terms of the contract do not justify the conclu- sion that there was any attempt or intention to convey to the agent any part of the title or any distinct interest or estate in

the real estate itself. The interest created in or conveyed to the agent was a definite part of the proceeds of sales, an interest in the result—the thing produced by the exercise of the power— and therefore the contract cannot be properly said to be "a power coupled with an interest." It is true that, if the agreement had been fully completed, the agent might have claimed under it an interest in that part of the property remaining after a sufficient amount had been sold to satisfy the Beard mortgage; yet this particular interest was contingent and did not vest upon the execution and delivery of the contract. It was not such an interest as the agent could have conveyed in his own name in the event of the death of the principals. It is equally clear that there is nothing in the terms of the contract to justify the claim that it was the purpose or intention of the parties to create a lien on the land in favor of the agent to secure his stipulated contingent commissions, as in *American Loan & Trust Co. v. Billings,* 58 Minn. 187, 59 N. W. 998. The most that can be claimed for this writing is that it was a contract of employment and that the relation created by it might be terminated at the will of the principal.

We therefore conclude that the trial court was in error in holding that the contract created in the agent an interest in the property itself and was a "power coupled with an interest," and therefore irrevocable by the principal.

However, it does not follow from this conclusion that the power to revoke the agency was rightfully exercised by the principal. If the power was not rightfully exercised, the principal may be liable to respond in damages for any wrong inflicted upon the agent by the revocation. The contract is silent as to the time the agency or employment should exist, but it is stipulated that the agent should pay certain expenses and give his entire time in accomplishing the purposes of the agency. It is alleged in the answer that the agent had paid out large sums of money under the contract, and that he had faithfully kept and performed each and every part of the contract to be by him kept and performed. If these things are true, he has been damaged by the revocation of the agency, and the principal may be liable

228        SUPREME COURT OF OKLAHOMA.

School Dist. No. 38, Le Flore Co., v. School Dist. No. 92, Le Flore Co.

to respond in damages. *Cloe v. Rogers,* 31 Okla. 255, 121 Pac. 201, 38 L. R. A. (N. S.) 366. Although the pleadings were not cast and the case tried upon the theory of law as announced in *Cloe v. Rogers, supra,* we are inclined to the opinion that, when the case gets back in the trial court, permission should be given to amend the pleadings so as to include that theory of the law, if the parties wish to do so.

We therefore recommend that the judgment appealed from be reversed, and said cause be remanded, with directions to vacate the judgment entered and to grant a new trial.

By the Court: It is so ordered.