LUX McFADDEN *v.* J. A. CRISLER *et al.*

*(Jackson.* April Term, 1919.)

1. BROKERS. Authority. Cash sale. Sale on time not compliance.

An agency contract to sell land at a fixed price means a cash sale, where the contrary is not stated and does not authorize a contract for sale giving the buyer ten months in which to pay for the land or forfeit earnest money. (*Post, p.* 536.)

2. BROKERS. Exclusive agency. Right of owner to sell. Sale as revoking agency.

Where a farm was deeded to trustees who issued certificates to each of the owners showing the amount and part each paid, and they gave an exclusive agency contract to sell the land, and subsequently conveyed all the certificates to other parties, such transfer constituted a sale and revoked the agency, there being no stipulation against sale by the owners, since it is never presumed an owner has deprived himself of the right to sell. (*Post, pp.* 536, 537.)

Cases cited and approved:   Chambers v. Seay, 73 Ala., 372; Brown v. Pforr, 38 Cal., 550;   McKellop v. De Witz, 42 Okla., 220.

3. BROKERS. Authority to sell. Authority to contract to sell or make option agreement. ''Sale.''

An exclusive agency contract construed as authorizing a "sale," i. e., the finding of a purchaser and the consummation of a deal, and not to authorize a contract to sell or an option agreement for sale of the land. (*Post, p.* 537.)

Cases cited and approved:   Weatherhead v. Ettinger, 78 Ohio St., 104;   Jasper v. Wilson, 14 N. M., 482;   Trogden v. Williams, 144 N. C., 192.

4. BROKERS. Real estate brokers. Specific authority. Knowledge of purchaser. Construction of agency contract.

The agent's authority to sell real estate must be specific, and is generally closely construed, and the purchaser must know that

McFadden v. Crisler.

the seller is acting as agent, and not as principal, and must become aware of the agent's authority; and, where limited to sale at a fixed price per acre, the purchaser must know that the agent is without authority to make contract for sale, particularly one giving purchaser an unreasonable time to consummate the deal. (*Post, pp.* 537, 538.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals, from the Supreme Court.—Hon. I. H. Peres, Judge.

G. T. Fitzhugh, for complainant.

Ewing, King & King and Burch & Minor, for defendants.

Mr. Chief Justice Lansden delivered the opinion of the Court.

The bill was filed in the chancery court of Shelby county against twenty defendants for the purpose of having a specific performance of an alleged conveyance of a certain farm situated in Shelby county. The bill was demurred to by the defendants, and the chancellor sustained the demurrer and dismissed the bill. The complainants appealed from his decree to the court of civil appeals, and in that court the chancellor was affirmed. The case is before us upon a petition for *certiorari*.

The defendants, twenty in number, bought about six hundred and thirty-two acres of farm land in Shelby

county, and had the title vested in certain trustees. Certificates were issued to the beneficial owners in the proportion in which they paid the purchase price, showing the amount paid by the certificate holder, and his interest in the land. The trustee rented the land to W. A. Johnson, and in the rental contract they constituted him their sole agent to sell the land in the following language:

"Rent for 1917—Possession Jan. 1, 1917; note payable Nov. 15, 1917, $1,500.00, with sole agency at $45.00, per acre, with 5 per cent. commission on sale—Agency to date from Oct. 1, 1916.

"If not sold 1917—

"Rent note for 1918, payable Nov. 15, 1918, $1.500.00 with sole agency—to sell at $50.00 per acre—with 5 per cent. commission on sale.

If not sold during 1918—

"Rent 1919—$1,500.00, note payable Nov. 15, 1919, with sole agency to sell at $55.00 per acre—5 per cent. commission on sale."

This contract was executed October 13, 1916. While this contract was in force, but before any sale or contract of sale had been made, the defendants, Smith & Crisler, acquired all of the certificates of interest in the land, and in this way became the sole owners thereof. The legal title remained in the trustees. Afterwards Johnson executed the following contract to the complainant McFadden:

"This contract, made and entered into in duplicate, by and between W. A. Johnson, agent, and E. R. Parham and Wm. White, trustees; Chas. R. Miller, John

M. Tuther, A. Barnett, et al., of the first part and Lux McFadden of the second part, witnesseth:

"That the said first party hereby agrees to sell, and said party of the second part hereby agrees to buy upon the terms, conditions and stipulations hereinafter set out certain real estate in Shelby county, Tennessee, described as follows, to wit:

"Six hundred and thirty-two and one-half (632½) acres, more or less, known as the John Alsup farm, situated near Mullins Station on the N. C. & St. L. Railroad, and being the same land described in a deed in Book 438, page 205, register's office of Shelby county, Tennessee, to which reference is here made. And being the same land surveyed by H. G. Ferrees December 8, 1916, as per plat and blueprint made by him.

"The terms, conditions and stipulations above referred to are as follows:

"The consideration to be paid by said party of the second part is to be $45 per acre, upon terms as follows:

"All cash, owners to pay taxes for the year 1917.

"Said party of the second part has deposited with W. A. Johnson, agent, through whom this sale was made, the sum of $100 cash, as earnest money, the receipt of which is hereby acknowledged.

"Said party of the first part shall furnish abstracts of title and tax, and if required of judgments, and after the delivery of abstracts of title and taxes (thirty) 30 days shall be allowed for examination. If the title is not good and cannot be made good within ninety days after written notice that the title is defective, the earnest money shall be returned to party of the second part.

McFadden v. Crisler.

"After the examination of the title, if the same is good, said party of the first part shall execute and deliver to said party of the second part, or to any person he may name, on December 31, 1917, a warranty deed, conveying said property, and the purchaser shall at the time pay the cash consideration to the said first party.

"The said second party is purchasing. said property with the knowledge and consent that W. A. Johnson has a three-year lease upon it for the years of 1917, 1918, and 1919.

"It is mutually agreed between the seller and the purchaser that while the abstracts are to be delivered without delay, it is expressly agreed and understood that the owners are to deliver the deed on December 31, 1917, and the purchase money is to be paid at that time, and that if the purchase money is not paid on December 31, 1917, upon the tender of a valid warranty deed, the said earnest money is to be forfeited to the party of the first part.

"It is agreed and understood that W. A. Johnson is to be paid five per cent. commission on the amount of the purchase price by the present owner when the trade is closed; and that the said W. A. Johnson is to give possession of the land and cancel his lease on December 31, 1917, and the present owners are to have the rent for year 1917."

The demurrers to the bill raise the general proposition that defendants did not authorize Johnson to make the foregoing contract, and, if they did, it was revoked before he made it. Of course, either proposition being

settled in favor of defendants, the complainant's suit must fail.

We think it entirely clear that the contract of sole agency conferred by the owners upon defendant Johnson did not authorize him to make a contract of sale of any kind, and especially a contract of sale upon time. The contract gave the complainant McFadden about ten months in which to pay for the land or the $100 of earnest money paid at the time of the contract, and gave the defendants only thirty days in which to prepare their title papers.

Authority to sell land at a price fixed by the owner means a sale for cash, unless the contrary is stated. This must be so necessarily because the owner, having placed a value in dollars upon his land, is entitled to receive the amount at which he fixes the value of the land. 31 Cyc., 1215.

Nor would the fact that Johnson had the sole agency for the sale of the farm prevent the owners from selling themselves. There was no stipulation in the contract of agency to this effect, and it is never presumed that the owner of property has deprived himself of the right to sell it. Mechem on Agency, section 2445. This being true, and Johnson having no interest in the property coupled with his contract, the act of selling the property *ipso facto* operated to revoke the agency because Johnson knew of the sale to defendants Smith & Crisler before he entered into the alleged contract with compliments. Mechem on Agency, sections 570, 560, 413; 31 Cyc., 1300, and authorities cited; *Chambers* v. *Seay,* 73 Ala., 372; *Brown* v. *Pforr,* 38

Cal., 550; *McKellop* v. *De Witz,* 42 Okl., 220, 140 Pac., 1161, 52 L. R. A. (N. S.), 255.

We are also of opinion that the agency of Johnson did not authorize him to execute a contract to sell. His agency was to sell; that is, to find a purchaser and consummate a deal.

The contract which he made with McFadden does not compel McFadden to purchase, and in addition gives him about ten months in which to pay the price fixed by the owners. Johnson merely conveyed to McFadden the right to buy, or to forfeit $100 for ten months' time in which to decide whether he would buy. It is immaterial whether this contract between Johnson and McFadden be called an option or a contract to sell. We think it is plain that the contract does not comply with the terms of Johnson's agency. *Weatherhead* v. *Ettinger,* 78 Ohio St., 104, 84 N. E., 598, 17 L. R. A. (N. S.), 211, and note; *Jasper* v. *Wilson,* 14 N. M., 482, 94 Pac., 951, 23 L. R. A. (N. S.), 982, and note; *Trogden* v. *Williams,* 144 N. C., 192, 56 S. E., 865, 10 L. R. A. (N. S.), 867, and note.

We have examined some of the many cases cited upon the brief for petitioner, and we think they are not controlling. There is a difference between contracts of sale made by the owner of land and contracts of sale made by agents. In the first case the inquiry is if the minds of the parties met, whereas in the second case the chief inquiry always is if the contract made by the agent is authorized by his principal. The authority of the agent to sell real estate must be specific, and is generally closely construed. This is shown by the authorities just cited, if, indeed, authority is needed

for so plain a proposition. The purchaser of land from an agent must know that the proposed seller is acting as an agent and not as principal, and therefore must become aware of the agent's authority to sell. If he finds that the agent is authorized to sell for so many dollars per acre, he must know that this does not include authority to make a contract of sale at all, and especially one which gives him an unreasonable length of time in which to consummate the deal. There is nothing in the power conferred upon Johnson which authorizes him to do this.

Hence we conclude that the sale of the property by the true owners before Johnson made the alleged contract with McFadden necessarily releases them from any claim which McFadden could prefer against them. At the time Johnson made the alleged contract with complainants, he was not the agent of the previous owner to sell the property, because they did not own it. We do not see how he could be thought the agent of Smith & Crisler, because they had never appointed him. We, therefore, conclude that complainant has no right to a decree for the specific performance of his contract.

In what has been said it must be borne in mind that we are considering the equitable remedy of specific performance, and the power of the owners to revoke the contract by the sale to Smith & Crisler. We have not considered their right to do so, nor Johnson's remedy in case there had been a wrongful revocation of his authority.

The writ is denied.