## Wytheville.

## GEORGE H. RUCKER & CO. V. JOHN W. GLENNAN, TRUSTEES, ETC.

### June 16, 1921.

1. REAL ESTATE BROKERS—*Mere Agency—Coupled with an Interest—Case at Bar.*—In the instant case the owner of a tract of real property entered into a contract with a real estate broker, whereby the owner agreed to subdivide and plat the tract and place it in the hands of the broker for sale. It was agreed that the owner was to receive a minimum of $4,000 from the sale of lots and the net proceeds from the sale over and above that amount was to be divided equally between the broker and the owner. The lots were to be sold at a minimum install-ment price of $200 and a minimum cash price of $150. The agreement was to go into force at once, and if no lots, or not a sufficient quantity to justify the continuance of the agree-ment, were sold within a reasonable time, say six months, the agreement might be terminated by notice to the other party.

   *Held:* That this contract was a mere contract of agency, not coupled with an interest, and that the provision for the divi-sion of the net proceeds was a mere method adopted by the parties for providing for the agent's compensation.

2. REAL ESTATE BROKERS—*Mere Agency—Coupled with an Interest—Revocation of Authority.*—Where there is a mere contract between principal and agent for the sale of real estate, not coupled with an interest, the principal has the power of revo-cation, but the power to revoke must not be confused with the right to revoke.

3. AGENCY—*Revocation—Agency Coupled with an Interest.*—The question of whether a principal has the right to terminate his relations with the agent without liability to him, depends on the contract, and if the agent is discharged in violation thereof, has a right of action. If the agent holds at will, it may be re-voked at any time, with or without reason, unless coupled with an interest, or the agent has proceeded with the performance of his contract; for if the agent has partly executed his author-ity, and then the principal revokes the unexecuted part, caus-

ing him damage, he must indemnify the agent to the extent of the damage caused. But the expression, "coupled with an interest," in such a connection, means a writing creating, conveying to, or vesting in the agent an interest in the estate or property which is the subject of the agency, as distinguished from the proceeds or profits resulting from the exercise of the agency, and the compensation to be earned by an agent to sell land is not such an interest therein as renders his authority irrevocable.

4. AGENCY—*Revocation—Agent's Rights.*—Although a principal has the undoubted power, so far as the agency is executory, to revoke the agent's authority, it by no means follows that he has always a right to do so, since the contract of agency might provide otherwise. Accordingly, if he revokes the agency in violation of the contract, he becomes liable to the agent for the damages caused thereby. The agent, therefore, is limited to his action for damages, as the courts will not specifically enforce the contract against the principal. If the contract contains no terms indicating the creation of an agency for a definite period, or if the contract is not supported by a sufficient consideration, it is terminable at will.

5. REAL ESTATE BROKERS—*Revocation of Authority—Case at Bar.*—The owner of real property placed a tract of land, subdivided into lots, in the hands of a broker for sale. The owner was to receive a minimum of $4,000 from the sale of the lots and the net proceeds of the sale above that amount were to be divided between the broker and the owner. The agreement was to go into force at once, and if no lots, or not a sufficient quantity to justify the continuance of the agreement, were sold within a reasonable time, say six months, the agreement might be terminated by notice to the other party. After a considerable number of lots had been sold and the owner had received more than $4,000, the owner undertook to revoke the authority of the broker to sell.

*Held:* That the owner violated his contract, and the brokers could recover such fair damages as it could establish by satisfactory evidence. While the principal had the power to revoke the agency, he had no right to violate the contract.

6. REAL ESTATE BROKERS—*Compensation—Implied Contract.*—Where owing to the death of a partner in a firm of real estate brokers and the reorganization of the firm, it was doubtful whether the new firm succeeded to all the rights of the original firm under a contract with a landowner for the sale of lots owned by him, still if the new firm sold a large part of the property, for which they received no compensation, the landowner, having accepted their services, was liable under an implied promise to compensate them for the value thereof.

7. EQUITY—*Dismissal of Bill—Transfer to Common-Law Docket— Code of 1919, Section 6084.*—Real estate brokers filed a bill in equity against a landowner who had revoked a contract with them for the sale of certain lots, asking specific performance of the contract and an accounting, etc. Upon demurrer, complainants declined to amend and the bill was dismissed for want of jurisdiction.

   *Held:* That under Code 1919, section 6048, the court, instead of dismissing the bill, should have transferred the cause to the common law docket and directed such change in or amendments of the pleadings as were necessary to conform them to the proper practice at law.

8. APPEAL AND ERROR—*Amendment by Appellate Court—Section 6084, Code of 1919.*—Where the trial court dismissed a bill which, under Code of 1919, section 6084, should have been transferred to the common law docket instead of dismissed, the error is not reversible as it affects a mere question of procedure, and as the substantial rights of the parties can be preserved by an amendment of the decree, by adding thereto the provision that such dismissal is without prejudice to the right of the complainants to institute a motion or action at law, the Supreme Court of Appeals will so amend the decree.

Appeal from a decree of the Circuit Court of Arlington county. Decree for defendant. Complainants appeal.

*Amended and affirmed.*

The opinion states the case.

*Wm. C. Gloth, Jas. R. & H. B. Caton* and *Harry R. Thomas,* for the appellants.

*Amos C. Crounse* and *John W. Glennan,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

John W. Glennan, as trustee for Mary Louise Alexander, having the legal title to a tract of between four and five

acres of land, with the right to sell and convey it, entered into a contract on the 31st day of May, 1919, which reads:

"Memorandum of agreement made this 31st day of May, 1919,, by and between John W. Glennan, of the city of Washington, District of Columbia, as party of the first part, and George H. Rucker & Co., of Alexandria county, Virginia, as party of the second part;

"Whereas, the said John W. Glennan, as trustee for Mary Louise Alexander, is the owner of and has the legal title to four and 5917/1000 (4.5917) acres of unsubdivided land at Clarendon, Virginia, being part of the farm or estate of the late Columbus Alexander, deceased, and he is anxious to subdivide the said tract and market the lots to purchasers, and the said George H. Rucker & Co., being engaged in the real estate business and acting as agents for the sale of the same, are ready and willing *go* engage in the sale of the said property and in consideration of the premises, and of the sum of one dollar ($1.00), and other valuable consideration moving from *each* party hereto to the other, the receipt of which is hereby acknowledged, and in consideration of the mutual benefits to be derived by the parties to this agreement from the making and performance of this agreement and the mutual promises hereinafter set forth.

"Now therefore this agreement witnesseth as follows:

"The party of the first part agrees to subdivide or to have platted and subdivided the aforesaid 4.5917 acre-tract into as many lots as possible which are suitable for selling or the subdivision is to be made by the party of the second part if so requested, and the same to be put on sale as soon as possible, upon the following prices, terms, and conditions.

"It is understood and agreed by the parties to this agreement that the party of the first part is to receive at least or a minimum of four thousand dollars ($4,000.00), net, from

the sale of the lots, and over and above that amount, all the net proceeds or receipts from the sale of lots are to (be) divided equally between the parties of this agreement, and by the term net proceeds or receipts is meant, after the deduction of the expense of recording the subdivision plat; and for use of streets; the lots to be sold at prices to be agreed upon, with a minimum installment price of $200.00 and a minimum cash price of not less than $150.00.

"It is understood that this agreement is to take effect and be in force at once and the said subdivision is to be made immediately and the sale of the lots commenced without delay and pushed as rapidly as possible by the party of the second part. If no lots are sold within a reasonable time, say six months time, or not a sufficient quantity to justify the continuance of this agreement, then the parties hereto to this agreement reserve the right to terminate the agreement, by giving a notice in writing to that effect thirty days prior to the date for ending the agreement."

After a considerable number of lots had been sold, the trustee, Glennan, undertook to revoke the authority to sell by notice dated January 2, 1920, and directed the agents not to sell any more lots under the agreement. Thereupon the appellants (hereinafter called the complainants), Ashton C. Jones, N. A. Rees and Lizzie C. Rucker, partners doing business under the name and style of Geo. H. Rucker & Co., successors to Ashton C. Jones, N. A. Rees and Geo. H. Rucker, partners trading and doing business under the firm name and style of Geo. H. Rucker & Co., instituted their suit in equity against the appellees, John W. Glennan, trustee, and the beneficiary, Mary Louise Alexander, alleging that the revocation constituted a breach of contract for which they were entitled to compensation.

Omitting certain allegations unnecessary in the consideration of the material questions presented by the record, the bill alleged that the defendant, the trustee, subdivided

516 RUCKER & CO. v. GLENNAN, 130 VA. 511.

the land into lots, laid off and dedicated the property as a subdivision under the name of Glennan's Addition to Clarendon; that the complaints, acting under the contract, proceeded to advertise the property for sale, made sales of lots to numerous purchasers, and filed an itemized statement as an exhibit with the bill, showing the persons to whom lots had been sold with the prices obtained therefor; that including the payment of a $2,000 deed of trust which was a lien upon the property, they paid to the defendant trustee the sum of $4,121.10. It appears from the statement filed that over $600 of this amount was used for the payment of certain small commissions to others and for other expenses. They also alleged that under the contract they, complainants, were entitled to one-half of the proceeds of sale in excess of $4,000; that they had spent much time in interesting prospective purchasers in the property and had secured other prospective purchasers for the lots; that among them they had sold or agreed to sell certain lots to one Geo. Gerst; that thereafter, on January 2, 1920, they received the notice revoking their authority to sell, and that the said Geo. Gerst was also notified by the defendant trustee of such revocation of such authority; that the complainants had used their best efforts to sell the property, and believed that they had achieved a wonderful success; that in nearly every instance in which lots were sold they brought more than the minimum prices agreed upon, and that at the time the bill was filed all of the lots would have been sold and both they and the defendants would have realized profits therefrom, but for the fact of such revocation, and that by such revocation they have been deprived of the money rightfully due them resulting from their labors, and have suffered irreparable damage and harm growing out of such conduct of the trustee; that the trustee was perfectly satisfied and greatly pleased with the handling of the property until by their efforts more than $4,000 had

been paid in pursuance of the agreement as the proceeds of such sales, and that as soon as settlement had been made and he had received such amount, he notified the complainants not to proceed further under the contract. That this notice was not in conformity with the agreement, was a fraud upon their rights, and was done as they believe and allege in order to deprive the complainants of their just and equitable profits under the contract. That they have fully complied with the terms of the contract, have not violated any of its provisions, are entitled to have it specifically enforced, and the their rights thereunder determined. They aver that they have always been ready, willing and anxious to perform the contract, and are now willing to do so. They pray that the contract may be established, specific performance thereof decreed, and that an accounting may be had and the defendants enjoined and restrained from selling the property or any interest therein, from interfering with complainants in making sales thereof under the contract, and that they may be compelled to execute deeds of conveyance for said property in accordance therewith when the property or any part thereof is thereafter sold by complainants.

There was a demurrer to the bill, which the trial court sustained, and the complainants themselves being of opinion that the bill could not be amended, it was dismissed, and from this decree this appeal has been allowed.

We must determine then whether or not a court of equity has jurisdiction to enforce this contract specifically and to afford the relief prayed for, and if not whether the complainants can assert their claim for damages in a common law action or motion.

A number of statements are made in the briefs of counsel which do not appear in the record. Among these is the statement that Geo. H. Rucker, one of the partners of the original firm with whom the contract was made, died about

two months thereafter, and that his wife succeeded him as a member of the complainant copartnership under the same firm name. Assuming this to be true, it may well be doubted whether the new firm, under the mere allegation that they are successors of the old firm, can be held to have succeeded to all of their rights under the contract. It is un-, necessary, however, for the determination of this suit for us to discuss this question, and we shall treat it as if the allegation on the part of the new firm is legally sufficient on demurrer to show that they have in fact succeeded to all the rights of the original copartnership under that contract, or as if Geo. H. Rucker had not died, and the suit had been brought in the name of the original firm.

[1-2] Reverting to the contract, it seems to us perfectly apparent therefrom that it is a mere contract of agency, not coupled with an interest. Its recitals show in terms that the owner of the land was anxious to subdivide the tract and market the lots to the purchasers; that Geo. H. Rucker & Co. were engaged in the real estate business and acting as agents for the sale of the land, and were ready and willing to engage in the sale of this property; that the owner proposed to subdivide and plat the land into as many lots as possible which were suitable for sale, and that the lots were to be offered for sale as soon as possible. The minimum net amount to be received by the owner is fixed at $4,000 after the deduction of certain expenses; and this language is used: "The lots to be sold at prices to be agreed upon with a minimum installment price of $200.00 and a minimum cash price of not less than $150.00." The meaning of this clause is not entirely clear from the reading of the contract and in the absence of explanatory evidence may mean that the owner in each case must agree to the price of each lot to be sold, and if so it confirms the view that it is a mere contract of agency. As if to emphasize this, the contract itself reserves both the right and power of revocation under

certain conditions by either of the parties in this language: "If no lots are sold within a reasonable time, say six months time, or not a sufficient quantity to justify the continuance of this agreement, then the parties hereto to this agreement reserve the right to terminate the agreement, by giving a notice in writing to that effect thirty days prior to the date for ending the agreement." A fair consideration of the contract as a whole, and of these provisions, makes it evident that this is a mere contract between principal and agent for the sale of real estate, and that the provisions therein for a division of the net proceeds after the owner has received a minimum of $4,000, is the mere method adopted by the parties for providing for the agent's compensation. As to such contracts for the sale of real estate, there is practically no dissent from the view that the principal has the power of revocation. In this connection, however, there has been much confusion both of thought and language; and sometimes the *power* to revoke has been confused with the *right* to revoke.

We find this in 1 Mechem on Agency (2nd ed.), sec. 568: "Distinction may be made in these cases between the *power* to revoke and the *right* to revoke; the principal always having the power to revoke but not having the right to do so in those cases wherein he has agreed not to·exercise his power during a certain period. If, in the latter case, he does exercise his power he must respond in damages." Or, as tersely said in *Toppin* v. *Healey*, 11 Week. Rep'r, 466, by Willes, J., "You may revoke an authority, although you cannot revoke a contract."

[3-4] Expressed differently, the question of whether a principal has the right to terminate his relations with the agent without liability to him, depends on the contract, and if the agent is discharged in violation thereof he has a right of action. If the agent holds at will, it may be revoked at any time with or without reason, unless coupled with an interest

or the agent has proceeded with the performance of his contract; for if the agent has partly executed his authority, and then the principal revokes the unexecuted part, causing him damage, he must indemnify the agent to the extent of the damage caused. But the expression, "coupled with an interest," in such a connection means a writing creating, conveying to, or vesting in, the agent an interest in the estate or property which is the subject of the agency, as distinguished from the proceeds or profits resulting from the exercise of the agency, and the compensation to be earned by an agent to sell land is not such an interest therein as renders authority irrevocable. *Rowan* v. *Hull*, 55 W. Va. 335, 47 S. E. 92, 104 Am. St. Rep. 998, 2 Ann. Cas. 884, 21 R. C. L. 823.

This statement of the general doctrine, in 2 Corpus Juris p. 533, is fully supported by authority: "As between principal and agent the right to terminate the agency depends upon the ordinary principles of contract, and is governed by the same rules as apply to any other contract of employment. Although, as has been stated, a principal has the undoubted power, so far as the agency is executory, to revoke the agent's authority, it by no means follows that he has always a right to do so, since the contract of agency may provide otherwise. Accordingly, if he revokes the agency in violation of the contract, he becomes liable to the agent for the damages caused thereby, although it should be observed in this connection that the agent is limited to his action for damages; the courts will not specifically enforce the contract against the principal. But if the contract of agency contains no terms indicating the creation of an agency for a definite period, or if the contract is not supported by a sufficient consideration, it is terminable at will, and the principal by revoking the authority incurs no liability to the agent, unless the agent has entered upon performance of the contract so that a revocation of his authority will work him legal injury."

The subject was carefully and succinctly treated in the case of *Atlantic Coast Realty Co.* v. *Townsend,* 124 Va. 503, 98 S. E. 684, where, under an alleged contract which gave a real estate agent the exclusive right to dispose of a large tract of real estate at prices which had been agreed upon, which the defendant wrongfully revoked, this is said by Kelly, P.: "No question as to rights of third persons is here involved; and there is no claim that the agency was, in a technical sense, coupled with an interest. Under the facts as alleged in the declaration it is not denied, and it is clear, that the defendant not only had the power to revoke, but did in fact effectually revoke the agent's authority by making, on his own behalf and independent of the agency, a sale of the subject matter of the contract." The right to bring a common law action for such a breach of contract was there sustained.

In the recent case of *McKellop* v. *Dewitz,* 42 Okla. 220, 140 Pac. 1161, 52 L. R. A. (N. S.) 255, in which the owner by written contract platted certain real estate into lots and blocks and designated a real estate agent to sell the lots at a specified price, agreeing to pay the agent a percentage of the proceeds of sale as his commission, and also to allow him a definite interest in the lots remaining after a sufficient number had been disposed of to discharge a mortgage debt against the property, and the agent agreed to pay all expenses incurred in selling the lots, and also one-half of the mortgage debt against the property, it was held that such a contract is, not a power coupled with an interest, and creates between the parties the relation of principal and agent, which may be terminated by the principal, subject to his liability in damages if substantial injury is sustained by the agent.

There is an exhaustive note on the subject to the case of *Alexander* v. *Sherwood Co.,* 72 W. Va. 195, 77 S. E. 1027,

in 49 L. R. A. (N. S.) 985, and there can be no doubt about this general doctrine. *Barnard* v. *Gardner Investment Corporation,* 129 Va., 346, 106 S. E. 346.

[5] These principles are controlling here. If the complainants can show that notwithstanding the death of George H. Rucker, they have succeeded to all of the rights of the original firm under the contract, and all the other allegations of the bill can be proved, then the defendant trustee violated his contract and the complainants can recover such fair damages for such breach as they are able to establish by satisfactory evidence, for while the principal had the power to revoke the agency, he had no right to violate the contract.

[6] In another aspect of the case, even if the complainants did not succeed to all the rights of the original firm under the contract, still if they sold a large part of the property for which they have received no compensation, the defendant, having accepted their services, is liable upon an implied promise to compensate the complainants for the value thereof.

[7-8] Under Code 1919, section 6084, the court, instead of dismissing the bill, should have transferred the cause to the common law docket and directed such change in or amendments of the pleadings as were necessary to conform them to the proper practice at law. As the complainants declined to amend, the court dismissed the bill upon sustaining the demurrer. Inasmuch, however, as this is a mere question of procedure, it is not reversible error, and the substantial rights of the parties will be preserved by an amendment of that decree. In order to preserve such substantial rights as the complainants may possibly have, we will amend that decree here by adding thereto the provision that such dismission is without prejudice to the right of the complainants to institute a motion or action at law, if they shall be so advised.

*Amended and affirmed.*