# Richmond

## Dr. Williams T. Spence v. Northern Virginia Doctors Hospital Corporation, Et Al.

January 16, 1961.

Record No. 5155.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Cornelius H. Doherty* (*Cornelius H. Doherty, Jr.*, on brief), for the appellant.

*A. Carter Whitehead* and *Frank L. Ball, Jr.* (*M. Patton Echols, Jr.; Ball, McCarthy, Ball & Embrey; Clarke, Richard, Moncure & Whitehead*, on brief), for the appellees.

I'Anson, J., delivered the opinion of the court.

■ The appellant, Dr. William T. Spence, is here on an appeal granted from a decree of the court below dissolving a temporary injunction and dismissing the bill of complaint filed by him, Drs. John T. Hazel, Raymond Schwartz and William D. Dolan, which prayed that the appellees, Northern Virginia Doctors Hospital Corporation and the president and secretary thereof, be restrained from selling or disposing of 6220 shares, or any part thereof, of the stock of the corporation which they allege were purchased by them and Dr. Henry L. Bastien through Balogh & Co., underwriting agent of the hospital corporation, until their rights have been determined; that the hospital corporation and its officers be required to transfer the shares of stock in accordance with their purchase order as follows: 1620 to Dr. Dolan, 1900 to Dr. Spence, 800 to Dr. Hazel, 1500 to Dr. Schwartz, and 400 to Dr. Bastien, who was not a party to the suit; and that the corporation not be permitted to hold a stockholders' meeting until the stock has been transferred as requested.

Seventeen persons, two of whom were the president and secretary of the hospital corporation, filed a petition as intervenors alleging that they had a claim against the 6220 shares of stock by virtue of a subscription agreement between them and the hospital corporation. They did not seek an adjudication of their claim in the event the court below determined that the complainants had failed to sustain their bill by proof, or if the bill was dismissed for any reason. Hence the court made no adjudication of their rights and they are not parties to this appeal.

Hazel, Schwartz and Dolan are not appealing from the decree of the court below.

The appellant's principal assignment of error is that the court erred in not directing the hospital corporation to issue to him "and

his designees" 6220 shares of the corporation stock. He relies on the facts offered in evidence and cites no case in support of his contention.

Although the appellant alleged in the bill of complaint that he was entitled to have 1900 shares of the 6220 transferred to his name, he now claims before us that he and "his designees" are entitled to the entire 6220 shares. He is bound by his allegations in the bill and cannot assert before us a case different from that presented in the lower court. The rights of "his designees," Hazel, Schwartz and Dolan, have been determined adversely to them, to which there has been no appeal, and the decree of the court below is final as to them. See *Universal C. I. T. Credit Corporation* v. *Kaplan*, 198 Va. 67, 69-70, 92 S. E. 2d 359, 361. Under no theory of the appellant's case is he entitled to more than 1900 shares. The hospital corporation is willing to transfer to Spence 1900 shares, but he insists that he is entitled to the entire 6220 shares and states that he is not interested in acquiring less than that number.

The evidence was heard *ore tenus* by the court below, and is as follows:

The Northern Virginia Doctors Hospital Corporation was incorporated in Virginia on May 24, 1957, for the purpose of constructing and operating a proprietary doctors' hospital in Arlington county.

The hospital corporation made a public offering of 30,000 shares of its stock at $10 a share. The Riggs National Bank of Washington, D. C., was named by the corporation as its exclusive transfer agent. Various brokerage firms acted at times as agents for the sale of the stock, each of them being the exclusive agent for the time they were so engaged. A great number of the shares were sold, but in April and May of 1959 the sales were lagging. In order to complete the sale of all the unsold stock offered, and to comply with the requirements of a commitment for a construction loan from the Arlington Trust Company, the directors of the hospital corporation, with the approval and consent of Balogh & Co., the underwriting sales agent at the time, had prepared and circulated a subscription contract for the sale of 6400 shares of stock. Balogh & Co. agreed to set aside and withdraw from public sale 6400 of the 8603 shares it was authorized to sell at the time, to handle the bookkeeping and the funds collected under the subscription contract, and to give the commissions derived from the sale of the 6220 shares, which would

amount to approximately $9,000, to the hospital corporation as a donation. (The record does not show when the 6400 shares set aside and withdrawn from public sale by Balogh & Co. were reduced to 6220 shares.)

The subscription contract, which Balogh was familiar with, provided that the subscribers whose names were signed thereto agreed to take the number of shares opposite their names and to pay fifty percent of the subscription price on or before July 15, 1959, and the balance at such times and in such amounts as might be required by the directors of the hospital corporation, but in any event the balance due would be paid before the date that construction of stage one of the hospital was completed. It further provided that the stock subscribed to was a part of the remaining 8603 shares of the stock of the corporation offered to the public, and in the event the 8603 shares were not reliably subscribed on or before July 30, 1959, the subscriptions would be null and void.

Sixty-three persons reliably subscribed for all of the shares withdrawn from public sale pursuant to the agreement, confirmation notices of their purchases were mailed by Balogh & Co., and $21,900 was paid on the purchase price, which amount was less than fifty percent of the amount due under the subscription contract. All of the 8603 shares were subscribed to or sold by July 30, 1959.

Balogh testified that on July 27, 1959, he notified Mr. O'Neil, administrator of the hospital corporation, who prepared and circulated the subscription agreement, that he could no longer go along with the agreement of fifty percent payment in accordance with the subscription contract and demanded that the balance due on all of the stock sold under the subscription contract be paid on or before July 31, 1959. At the request of O'Neil he extended the time until 12 noon on August 3, 1959, and stated to him that if the entire balance was not paid on that date the sales would be cancelled and the checks returned. Between 2:00 and 2:30 o'clock on the afternoon of August 3rd, Schwartz, who was vice president, a director and member of the executive committee of the hospital corporation, Dolan, Hazel and Spence visited Balogh's office and discussed with him their possible purchase of the 6220 shares set aside under the subscription agreement, but there had been some discussion of the matter between Spence and Balogh prior to that time. Late in the afternoon of the same day Balogh & Co. mailed to the 63 subscribers notices of cancellation of their subscriptions and returned their checks,

which the company had kept in its files and not deposited to the escrow account of the hospital corporation. Balogh received a phone call from the appellant at his home on August 3, at 5:15 p.m., as a result of which he considered he had made a firm sale of the 6220 shares to Spence and the parties to be later named by Spence. Balogh also testified that: "I had not sold the shares until the morning of the 4th of August."

On the night of August 3rd the president of the hospital corporation learned of the negotiations between Balogh and Hazel, Schwartz, Dolan and Spence and a called meeting of the executive committee of the hospital corporation directors was held that night sometime after 10:30 o'clock. Schwartz was present at this meeting. He was also one of the subscribers under the subscription contract and had paid in the required fifty percent. A resolution cancelling the corporation's sales agreement with Balogh & Co. was unanimously adopted, pursuant to authority given the committee, and later confirmed by the corporation's directors. A telegram embodying the contents of the resolution was dispatched to Balogh & Co. and received by it prior to the opening of business on August 4th.

The underwriting agreement between Balogh & Co. and the hospital corporation provided: "That either party to the agreement may, upon five days' written notice to the other party thereto, terminate the agreement."

On August 6th Balogh received a certified check for $62,200, in full payment of the 6200 shares, which was delivered to the Riggs National Bank, the transfer agent, with instructions to issue the stock in the names of the appellant and his associates in the amounts listed, pursuant to the purchase order hereinbefore referred to. The stock was not issued as directed because the hospital corporation, pursuant to the action of its executive committee, had withdrawn the certificates.

O'Neil, the hospital corporation's administrator, testified that Balogh never told him that he could not go along with the subscription contract. He denied that Balogh told him prior to July 31st that he was requiring the payment of the full amount due for the 6220 shares of stock. He stated that Balogh did tell him on July 31st that he wanted all the money by 3 o'clock that afternoon, and that he had not talked to him since.

It is well established that a chancellor's decree based on evidence heard *ore tenus* is entitled to the same weight as a jury's verdict

(*Arrington* v. *Arrington,* 196 Va. 86, 88, 82 S. E. 2d 548, 549; *County Board* v. *Town of Fairfax,* 199 Va. 612, 617, 101 S. E. 2d 519, 523) and it will not be disturbed unless it is plainly wrong or without evidence to support it. *Rogers* v. *Runyon,* 201 Va. 814, 816, 113 S. E. 2d 679, 680.

The question before us is not whether the evidence would have supported a finding of fact and a decree in favor of Spence, but whether the record contains substantial credible evidence which, upon application of correct principles of law, supports the findings and the decree of the chancellor. *Barnes* v. *Moore,* 199 Va. 227, 228, 98 S. E. 2d 683, 684.

The appellant argues that the hospital corporation had not effectively revoked Balogh & Co.'s agency before it sold the stock because the five days' written notice of cancellation had not been given pursuant to the terms of the sales agreement.

Where there is a contract between a principal and an agent for the sale of stock, not coupled with an interest, the principal has the *power* to revoke the agency at any time before a sale has been made. This power must not be confused with the *right* to revoke, however, for a party improperly revoking a contract may be liable for its breach. See *Rucker & Company* v. *Glennan,* 130 Va. 511, 518, 519, 520, 107 S. E. 725, 727, 728; Mechem, Outlines of Agency, 3d Ed., § 192 et seq. beginning p. 116.

There was credible evidence before the chancellor showing that the notice of revocation of the sales contract was received by Balogh & Co. before the sale of the stock. Balogh & Co.'s rights to commissions from the sale of stock did not give it a right "coupled with an interest," and the hospital corporation had the *power* to revoke the sales contract at any time before the sale. The *right* of the hospital corporation to revoke the contract without giving the required five days' notice in writing presents a question of whether or not the hospital corporation breached its contract with its agent. See *Rucker & Company* v. *Glennan, supra,* and Mechem, Outlines of of Agency, *supra.* That question is not before us and need not be discussed.

Moreover, the written sales contract between Balogh & Co. and the hospital corporation was modified. Balogh & Co. agreed to withdraw from public sale the 6220 shares, allowed the hospital corporation to make the sales, and agreed to contribute to the hos-

pital corporation the commissions it would have derived from its sale of the stock. The company's only interest in the subscription contract was to collect the purchase money as a convenience to the hospital corporation. It was not given any right to cancel the subscription agreement between the hospital corporation and its subscribers.

For the reasons given, the decree of the chancellor is

*Affirmed.*