(No. 13483.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* E. E. FORD *et al.* Appellees.

*Opinion filed October 23, 1920.*

1. CORPORATIONS—*distinction between mandatory and directory provisions for organization of corporations.* There is a distinction between mandatory and directory provisions in the statutory requirements for the organization of corporations, and not every direction will be construed into a mandatory prerequisite of corporate existence where the true intention and object of the law will not be promoted by such construction.

2. SAME—*requirement of section 4 of general Corporation act that statement of incorporation shall be sealed is not mandatory.* The requirement of section 4 of the general Corporation act that the statement of incorporation shall be sealed is not a mandatory requirement that the signatures be followed by a scrawl or printed seal, as the purpose of the statement is to make a public record of the corporation, and the object of the law is not promoted by making the seal a prerequisite to the legal existence of the corporation.

3. SEALS—*an individual seal is a mere formality.* The requirement of a seal in the execution of documents by individuals is a mere formality, and while courts of law cannot disregard the legal quality of the sealed instrument, courts of equity will relieve parties from difficulties arising from the application of the rigid rules of the common law to such instruments.

FARMER, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, WILL C. MOODY, MORTIMER C. GROVER, WILLIAM C. CLAUSEN, and MATTHEW MILLS, for appellant.

SILAS H. STRAWN, WALTER H. JACOBS, RICHARD H. HOLLEN, and RICHARD S. TUTHILL, JR., for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Fifty-first General Assembly passed an act in relation to corporations for pecuniary profit, known as the General Corporation act, which was approved on June 28, and became effective July 1, 1919. (Laws of 1919, p. 316.) Section 4 provides that "whenever three or more adult persons, citizens of the United States of America, at least one of whom shall be a citizen of this State, shall desire to form a corporation under this act, they shall sign, seal and acknowledge before some officer, competent to take acknowledgment of deeds, a statement of incorporation setting forth the following:" (Here follow thirteen paragraphs stating the facts to be contained in the statement.) The section closes with the sentence that "such statement shall be filed in duplicate in the office of the Secretary of State on forms prescribed and furnished by the Secretary of State." Section 5 provides that "upon the filing of such statement, the Secretary of State shall examine the same, and, if it is in conformity with the provisions of this act, he shall indorse thereon the word 'Filed' followed by the month, day and year of such filing. Upon such filing the corporation shall be deemed fully organized and may proceed to business." On September 5, 1919, a certificate of incorporation of the Washer Maid Company was filed in duplicate in the office of the Secretary of State. The Attorney General afterward, by leave of the court, filed in the circuit court of Cook county an information in the nature of *quo warranto* against E. E. Ford, A. J. Fisher and C. R. Gilbert, charging them with having unlawfully usurped, intruded into, held and executed the office of directors of a pretended corporation known as the Washer Maid Company under color of a void and illegal certificate of incorporation, and calling upon them to show by what warrant

they exercised such privileges. The respondents filed a plea showing the various steps taken for the organization of the corporation, setting forth *in hæc verba* the statement filed by them, alleging that it was made on forms prescribed and furnished by the Secretary of State, which were executed and acknowledged by the respondents, and that the respondents had in all respects complied with the requirements of the General Corporation act. The Attorney General demurred and for special cause of demurrer showed that the respondents in their statement of incorporation did not sign, seal and acknowledge the same, but, on the contrary, failed to seal the same or to affix their seals to said statement of incorporation, as required by the General Corporation act. The statement set forth in the plea shows the signatures of the respondents as follows:

> E. E. Ford,        ⎫
> A. J. Fisher,      ⎬ Incorporators.
> Chas. R. Gilbert. ⎭

The word "seal" does not appear, nor are there any letters, scrawl or marks which might be regarded as a seal unless it is the bracket which joins the names, and neither the statement itself nor the certificate of acknowledgment contains any reference to a seal. The court overruled the demurrer, and the Attorney General electing to stand by it, the information was dismissed. An appeal was taken, and at the June term the cause was submitted with a request by both parties for an early decision because of the public importance of the question involved. It was stated that more than 4300 corporations had been organized under the new act; that the statement of incorporation in each case was made upon the form prescribed and furnished by the Secretary of State and was identical with the form used in this case, and that the incorporation of each of those corporations was subject to the same infirmity as that alleged against the appellees. The fees paid to the Secretary of State amounted to more than $600,000 and annual fran-

294 — 21

chise taxes to a large amount were about to fall due on July 1. Recognizing the public inconvenience which would arise from a prolonged uncertainty as to the legality of the organization of these corporations we announced orally our judgment affirming that of the circuit court, stating that the reasons would be given in an opinion to be filed later.

The question presented was whether the requirement that the incorporators shall seal the statement is mandatory or directory. It was argued on behalf of the People that the requirement of the seal is a condition precedent to the legal existence of a corporation. A somewhat similar question arose early in the history of the State in the case of *Cross* v. *Pinckneyville Mill Co.* 17 Ill. 54. The act of 1849 to authorize the formation of corporations for manufacturing, agricultural, mining or mechanical purposes provided that any three or more persons desiring to form a company for such purpose should make, sign and acknowledge and file "in the office of the clerk in the county in which the business of the company should be carried on and a duplicate thereof in the office of the Secretary of State, a certificate in writing," in which should be stated the name of the company and other facts mentioned in the statute. It was further provided that when the certificate should have been filed as aforesaid the persons who should have signed and acknowledged, and their successors, should be a body politic and corporate. In the case mentioned the duplicate certificate of organization had not been filed in the office of the Secretary of State, but the court held that fact unimportant to defeat the organization or rights growing out of it; that there is a well settled distinction between mandatory and directory provisions, and that carrying out the true intention of the legislature and effectuating the object of the law would not be promoted by strict technical constructions, converting every direction and detail of power into a mandatory prerequisite of corporate existence. More recently a question arose as to the effect of the failure to

mail notices of the meeting of subscribers of the capital
stock to elect officers, as required by section 3 of the Cor-
poration act of 1872. We said: "The statute prescribes
a certain course to be pursued in organizing a corporation
in this State. It does not necessarily follow, however, that
any departure from that course will prevent a corporation
from becoming one *de jure.* Whether or not such depart-
ure will have that effect depends upon the nature of the
provision which is violated. If it is a mandatory provision,
a failure to substantially comply with its terms will pre-
vent the corporation from becoming one *de jure;* but if
the provision is merely directory, then a departure there-
from will not have that consequence." It was held that it
was immaterial whether or not notice had been given in
the manner directed by the statute, the persons entitled to
notice having waived it and actually attended the meeting,
so that the purpose of the statute in requiring the notices
to be given was accomplished. (*Butler Paper Co.* v. *Cleve-
land,* 220 Ill. 128.) The court there cited the case of *New-
comb* v. *Reed,* 12 Allen, 362, in which the legality of a
corporation was questioned where the call for the first meet-
ing was signed by only one of the persons named in the
act of incorporation instead of a majority, as required by
the statute of Massachusetts, and it was held that "the or-
ganization was not strictly regular but can hardly be con-
sidered even as defective." In contrast with this case, an
illustration of the distinction between mandatory and di-
rectory provisions is furnished by another case in the same
court, (*Utley* v. *Union Tool Co.* 11 Gray, 139,) in which
the articles of agreement of the incorporators did not fix
the amount of the capital stock or set forth distinctly the
purpose for and the place in which the corporation was es-
tablished, the court saying: "There is an obvious reason
for making such organization by written articles of agree-
ment a condition precedent to the exercise of corporate
rights. It is the basis on which all subsequent proceedings

are to rest and is designed to take the place of a charter or act of incorporation, by which corporate rights and privileges are usually granted." In *Kwapil* v. *Bell Tower Co.* 55 Wash. 583, it was held that where a corporation was organized pursuant to a statute except that it did not execute its articles in duplicate and retain a copy in its office, there was a substantial compliance with the law so as to make it a corporation *de jure*.

The requirement of a seal in the execution of documents by individuals has become a mere formality. It means nothing. Private seals no longer exist as a means of execution of specialties, for even an individual scrawl is not required. In most deeds the word "seal" is printed on the blank form which is used and the grantor does not know whether he has used a seal or not. It depends upon whether the word was printed on the paper or not. The solemnity of the sealed instrument is purely Pickwickian and no longer represents an idea. While courts of law in this State cannot disregard the legal quality of the sealed instrument, courts of equity frequently relieve parties from the difficulties arising from the application of the rigid rules of the common law to such instruments. We may look to the intention of the statute in determining the effect of an omission to add the seal. The purpose is to make a public record of the corporation, the definition of its powers, the amount of its stock, the names of its stockholders, its location, and other facts in connection with it which are of interest to the public to know and of the State in its supervision over corporations to be acquainted with. The addition of a seal is of no importance for these purposes. It is not of the essence of the thing to be done and no prejudice can result from its omission. The essential act of making the statement, though not in the precise manner indicated, accomplishes the substantial purpose of the statute, and that is sufficient. It would not be carrying out the intention of the legislature to hold that the addition

of a scrawl by the signers of the statement is mandatory and its omission invalidates the incorporation.

For these reasons the judgment of the circuit court was affirmed.

*Judgment affirmed.*

Mr. JUSTICE FARMER, dissenting:

The legislature saw fit to require the statement to be under seal. Whether this was an important requirement or not, the legislature had the power to, and did, make it. Courts cannot disregard it on the ground that it was a useless requirement or that the legislature did not mean what it said.