### Richmond

ALICE T. BARNARD V. GARDNER INVESTMENT CORPORATION.

March 17, 1921.

Absent, Sims and Burks, JJ.

1. CONTRACTS—*Parol Evidence to Show Want of Consideration— Real Estate Agent's Contract.*—In an action by a real estate agent against his principal for compensation defendant may prove by parol that notwithstanding the recital of a consideration of $1 in the agreement between the agent and defendant there was in fact no consideration, and hence the contract was revocable at the will of the principal. In such case, the parol evidence is not introduced for the purpose of nullifying the contract, but in order to show its true character.

2. AGENCY—*Revocation of the Agency by Principal—Real Estate Agent.*—A contract of agency, unless coupled with an interest, based upon valuable consideration, is generally revocable by the principal at will. Thus, a contract by a landowner with a real estate agent giving the agent an exclusive right to sell the landowner's property during a certain period may be terminated by the principal at will, on giving natice in good faith before the agent finds a purchaser.

3. AGENCY—*Coupled With an Interest.*—The words "coupled with an interest," as used in the rule that a real estate agent's contract is terminable at the will of his principal unless "coupled with an interest," mean an interest in the land itself, as distinguished from an interest in the proceeds of sale.

4. REAL ESTATE AGENTS—*Fraud in Procuring Agency—Question for Jury.*—In an action by a real estate agent for compensation, there was evidence that when the agent solicited the contract of agency he misrepresented to his principal the value of the property and while the evidence of intentional fraud might be doubtful and unconvincing, yet it was sufficient to justify a submission to the jury of the issue, whether or not the defendant was relieved from the obligation of her contract of agency by the fraud and misrepresentation of the agent in inducing her to enter into it.

5. REAL ESTATE AGENTS—*Fiduciary Relation—Fair Dealing of Agent.*—Real estate agents occupy a fiduciary relation to their

clients, and so long as that relation continues the agent is under a legal obligation, as well as a high moral duty, to give to his principal loyal service and the benefit of his information as to the property entrusted to him for sale. Under such circumstances the principal is frequently at a disadvantage, and hence is entitled to the utmost frankness, fidelity, and fair dealing from the agent.

Error to a judgment of the Circuit Court of the city of Norfolk, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Rumble & Rumble,* for the plaintiff in error.

*James G. Martin,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

Gardner Investment Corporation, engaged in the real estate brokerage business, through its president, J. W. Gardner, solicited and obtained from Alice T. Barnard the following contract:

"June 27, 1919.

"To Gardner Investment Corporation:

"For and in consideration of one dollar ($1.00), the receipt of which is acknowledged, I hereby appoint you exclusive agent to make sale of the real property herein described as 715 Boissevain avenue, for the price of $17,000, upon the following terms: $ . . . . . . . . cash, $ . . . . . . . . secured by mortgage thereon for . . . . year at . . . . per cent, and you are hereby authorized to accept a deposit to be applied on the purchase price and to execute a binding contract for sale on my behalf.

"In case the above-described property is sold or disposed of within the time specified, I agree to make the purchaser

a good and sufficient warranty deed to the same, and to furnish a complete abstract of title if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale no commission on the above price and 100 per cent of all of the consideration for which said property is sold over and above price above specified, amount for which said property may be sold.

"This contract to continue until July 27, 1919, and thereafter until terminated by me giving you as agent one day's notice in writing."

While the contract recites the consideration of one dollar, the evidence shows that the recital of such consideration is in print on one of the blanks of the company, and that no consideration was either paid, considered or discussed. Before any sale of the property had been made, Mrs. Barnard wrote this letter to the company:

"715 Boissevain Avenue,
"Norfolk, Va., July 3, 1919.
"Gardner Investment Corporation,
    "330-333 Seaboard Bank Building,
        "Norfolk, Va.
"Gentlemen:
"Having reconsidered the matter of selling my home on Boissevain avenue, I beg you to allow me to withdraw the option on said property. Thanking you for your kindness, I am,                  Very truly yours,
            (Signed)   "ALICE T. BARNARD."

On July 5th, when Gardner visited the property, Mrs. Barnard refused to allow the prospective purchaser who accompanied him to enter the house or to inspect its interior, and discussed with Gardner her change of purpose and desire to revoke the authority of the company under

the written contract. This was on Saturday, but, notwithstanding these clear indications of her intention to revoke the agency, thereafter, on Monday, July 7th, the company, through Gardner, undertook to exercise the authority conferred by the agreement by selling the property to D. T. I'Anson for $18,000. This purchaser sued Mrs. Barnard for specific performance of the contract, but for reasons satisfactory to himself dismissed his suit. Then the company instituted its action in assumpsit against her for the recovery of $1,000 as its compensation for finding such purchaser, claiming under the contract. The defendant pleaded non-assumpsit at the trial, there was a verdict in her favor, which, upon motion of the company, was set aside, thereupon judgment was entered in favor of the company for $1,000, and of this judgment she is here complaining.

[1]  1. One of the questions raised is whether or not the defendant could prove by parol that, notwithstanding the recital of a consideration in the agreement, there was in fact no consideration, and hence that the contract was revocable by her at will. The trial court excluded this evidence and refused to instruct the jury that the defendant had such power to revoke. It is not controverted by the company that an acknowledgment of a consideration in a written contract may be denied for many purposes, but it is claimed that it cannot be denied as to this contract because the effect of such denial is to nullify it.

One of the cases cited to support this view is *Lawrence* v. *McCalmont,* 43 U. S. (2 How.) 452, 11 L. Ed. 366, but what is said in that case is said with reference to a written guaranty of credit, and the court held that the guarantor having expressly acknowledged the receipt of consideration in the contract, could not prove the lack of consideration for the purpose of showing that she was not thereby bound.

The other case chiefly relied upon is *Watkins* v. *Robertson,* 105 Va. 284, 54 S. E. 33, 5 L. R. A. (N. S.) 1194, 115

Am. St. Rep. 880. That case involved a written option, under seal, whereby the owner of certain shares of capital stock of a corporation agreed with another to sell him such stock at a fixed price, to be delivered if the purchase price was paid on or before a certain date named therein. It was an option to buy, such as is commonly used, and the court there held that the owner was estopped to deny that such option was based upon a valuable consideration, in view of the fact that the contract itself recited such consideration; and for the reason that to permit such a denial would be to nullify the contract. So far as we are advised, however, it has never been held that it is not permissible to introduce evidence to contradict such a recital for any proper purpose in a contract not under seal.

Stephens' Digest of Evidence (2nd ed.), p. 220, on this subject, states these among the exceptions to the rule excluding oral evidence for the purpose of varying or contradicting a written contract: "Fraud, intimidation, illegality, want of due execution, want of capacity in any contracting party, the fact that it is wrongly dated, want or failure of consideration, or mistake in fact or law, or any other matter which, if proved, would produce any effect upon the validity of any document, or of any part of it, or which would entitle any person to any judgment, decree or order relating thereto."

Statements to the same effect, fully supported by authority, may be found in 2 Elliott on Contracts, sec. 1642; 1 Greenleaf on Evidence (16th ed.), sec. 284.

[2, 3] In this case the evidence was not introduced for the purpose of nullifying the contract, but in order to show its true character. The paper itself is in express terms a contract between an agent and a principal. Such a contract, unless coupled with an interest, based upon valuable consideration, is generally revocable by the principal at will, and it is not necessary to cite authority to establish

this proposition.  If in fact there was no consideration, this fixes the true nature of such a contract, establishes it according to its true intent, purpose and meaning, but does not nullify it.

We think, therefore, that the evidence should have been admitted and that the jury should have been instructed, in accordance with the request of the defendant, that she had the right to revoke the contract in good faith at any time prior to a sale.  The refusal of the trial court to take this view is reversible error.

The case of *Perrow* v. *Rixey*, 119 Va. 192, 89 S. E. 101, is, in our view, conclusive of this question.  The only difference between that case and this is that there the written agreement did not recite a consideration.  It did fix the net price and allowed the agent thirty days in which to make a sale; but the court held that inasmuch as it was an agency to sell land, which was neither coupled with an interest nor founded upon a valuable consideration, it might be terminated by the principal at will on giving notice, in good faith, before the agent found a purchaser; and that, "coupled with an interest," under such circumstances means an interest in the land itself, as distinguished from an interest in the proceeds of sale.

The contract in this case, illuminated as it is by the parol evidence showing that there was no consideration therefor, is identical in its legal effect with the contract which was involved in the case last cited.

[4, 5]  2. The case may also be considered from another aspect, with the same result.  There was evidence to the effect that Gardner, when he solicited the contract, told Mrs. Barnard, in response to her statement that she thought she ought to get at least $17,500 for the property, that she would never get it, that he did not think she would get $17,000, because it was not worth so much; that on July 3rd he, the president of the company, came to her

house and tried to buy the property for $15,000, and that on the same date he wrote to one Duncan, who had asked him for a description of the property, that the value of the ground was $12,500, of the building $20,000, and the total value of the property $32,500, while three real estate agents who were not contradicted testified that, at the time, a conservative estimate of the value of the property would be from $25,000 to $30,000.

This being the state of the evidence, the trial court instructed the jury as follows:

"The court instructs the jury that if they believe from the evidence that J. W. Gardner, president of the plaintiff corporation, was, on June 27, 1919, a dealer in real estate, familiar with real estate values in the city of Norfolk, and that he then knew the value of the defendant's property mentioned in the contract sued on in this case; that said Gardner, in order to induce the defendant to enter into the said contract, represented to her in substance and effect that said property was then worth not to exceed seventeen thousand dollars and that said sum was as much as she could possibly sell it for; and if the jury also believes from the evidence that defendant was not familiar with real estate values in said city and did not know the value of said property; that she relied upon the representations so made to her by said Gardner, and on the faith thereof entered into and signed the said contract authorizing said plaintiff to sell said property at the price of seventeen thousand dollars; and if the jury further believes from the evidence that said property was then in fact worth much more than seventeen thousand dollars, and that that fact was then known to the said Gardner, then the said contract was not binding on the defendant, and the jury should find for the defendant. When fraud or misrepresentation is relied on as a defense it must be proved by clear and convincing evidence."

So that the only issue submitted to the jury upon that evidence and instruction was whether or not the defendant was relieved from the obligation of her contract by the fraud and misrepresentation of the company's agent in inducing her to enter into it. While the evidence of intentional fraud may be doubtful and unconvincing, at the same time there was evidence sufficient to justify the submission of the issue thus raised to the jury. Real estate agents occupy a fiduciary relation to their clients, and so long as that relation continues the agent is under a legal obligation, as well as a high moral duty, to give to his principal loyal service and the benefit of his information as to the property entrusted to him for sale. Under such circumstances the principal is frequently at a disadvantage, and hence is entitled to the utmost frankness, fidelity and fair dealing from the agent. It is not surprising that, under this very proper instruction and with this evidence, the jury found in favor of the defendant. The trial court, however, set aside their verdict, and this is also assigned as error. What we have said is sufficient to indicate that we think the court's first impression, when giving the instruction, was correct, and that afterwards when the verdict was set aside, apparently upon the ground that the instruction was not justified by the evidence, the defendant was denied a substantial right.

Our conclusion, therefore, is to reverse the judgment, which was in favor of the company, and to enter judgment here upon the verdict in favor of the plaintiff in error.

*Reversed.*