William D. Whyte, Appellee, v. Alvah L. Rogers, Executor of the Last Will and Testament of Jens H. Larsen, Deceased, Appellant.

Gen. No. 9,402.

Heard in this court at the February term, 1939. ▆ Opinion filed January 8, 1940.

HALL & HULSE, of Waukegan, for appellant; HARRY A. HALL and MARSHALL MEYER, both of Waukegan, of counsel.

CHARLES L. WHYTE and GERALD C. SNYDER, both of Waukegan, for appellee; LEWIS D. CLARKE, of Waukegan, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This is a suit brought by William D. Whyte to recover a real estate commission. The suit was instituted against Jens H. Larsen, who died during the pendency of the suit, and his executor Alvah L. Rogers was substituted as party defendant. At the conclusion of all of the evidence the trial court directed a verdict

for the plaintiff for $1,750, upon which judgment was rendered and the defendant appeals.

The record discloses that on May 10, 1937 Jens H. Larsen was the owner of a three-story brick building located in the business section of Waukegan and that appellee William D. Whyte was a regularly licensed real estate broker having an office in Waukegan. On that day they each executed the following instrument:

"SALES AGREEMENT

May 10th, 1937

"In consideration of your placing upon your books my Real Estate described as follows:

Three Story Brick Building

Location #130 North Genesee Street

Waukegan, Illinois  Lot 23 x 131.34

North 1/3 of Lot Two (2) in  Specials All Paid

Block Eleven (11) in Original  Up In Full

Town of Little Fort (now City of Waukegan)

"I hereby give you exclusive Agency to sell said property from this date until October 1st, 1937 and thereafter until terminated by us. You are authorized to sell said property for a price of

$35000.00, $15000.00 Cash Balance On

Or Before Five Years at 6% interest,

payable semi-annually

or any lesser price which I may accept.

"There is an existing first mortgage of $5000.00 Maturing...............years at........% interest.

"Taxes and insurance pro-rated to date of closing of transaction and Merchantable Abstract or Guaranty Policy to be delivered.

"Your commission in case of a sale by you or during the period of your exclusive agency shall be Five (5%) % of the price at which the property is sold.

J. H. LARSEN . (SEAL)

Accepted:

WM. D. WHYTE  (SEAL)

Valuation 7910
Doc 175410 Trust Deed to G. S. Farmer, Trustee
12–1–17 for $15000.00—This has been
reduced to $5000 Peter Peggie''

Immediately thereafter appellee prepared a chart showing the physical division of the building for business purposes and a statement of the expenses for coal, insurance, taxes and income was prepared, the insurance thereon examined and a notation made thereof, and these were duly filed and placed on the books of appellee. On May 12, 1937 appellee contacted a prospective purchaser, Lee Wineske, took him to the property, discussed with him the terms of the leases thereon and endeavored to interest him in its purchase and a few days later a complete statement which appellee prepared analyzing the expense and income from the building was delivered to Wineske and on two or three subsequent occasions appellee discussed with him the purchase of this building. Jacob Blumberg and Sons owned the properties north and south of the Larsen building and on July 2, 1937 Jacob Blumberg agreed to purchase the Larsen property upon the terms specified in the agreement of May 10, 1937 and on that day delivered to appellee his check for $1,000, which was afterwards certified and thereafter cashed, but due to the fact that Mr. Larsen refused to complete the sale, the money was returned by appellee to Blumberg.

On June 4, 1937 J. H. Larsen wrote a letter which was thereafter duly received by appellee and this letter is as follows:

"June 4, 1937

''Dear Mr. Whyte,

''On or about May 12 1937 I executed an agreement giving you the exclusive agency for the sale of my property at 130 N. Genesee St. Waukegan. After some consideration I have decided to withdraw the property from sale at this time, and inasmuch as no considera-

tion was paid me for the agreement, I hereby notify you that it is cancelled effective immediately.

"My understanding from your conversation with my daughter, Mrs. Ernest Bidinger, is that you have not taken action towards selling the property, nor made any expenditure of any kind, and this withdrawal therefore will not result in any harm to you.

"Please take note accordingly and return the agreement given you.

"Yours very truly,

J. H. LARSEN."

Counsel for appellant insist that the instrument executed by appellee and appellant's testate on May 10, 1927 was merely an offer by Larsen to pay appellee a commission only in case of a sale, that it was executed without consideration and revoked prior to performance on the part of appellee and that therefore the trial court erred in refusing to give a peremptory instruction to find for appellant. In support of this contention, appellant cites *Wolber v. Chambers,* 128 Ill. App. 624; *Pretzel v. Anderson,* 162 Ill. App. 538; *Young v. Trainor,* 158 Ill. 428; *Wozniak v. Siegle,* 226 Ill. App. 619; *Goetz v. Ochala,* 180 Ill. App. 458; *Wentworth v. Mann,* 178 Ill. App. 621; *Des Rivieres v. Sullivan,* 247 Mass. 443, 142 N. E. 111, and *Barnard v. Gardner Inv. Corp.,* 129 Va. 346, 106 S. E. 346. It appeared in the *Wolber* case, *supra,* that the contract obtained from the purchaser by the real estate dealers was upon terms different in several respects from those upon which the brokers had been authorized by the owner of the property to sell and that therefore the plaintiffs had not proved that they had found a party ready, willing and able to purchase upon the very terms prescribed by the owner. In *Pretzel v. Anderson, supra,* the court held that the contract between the owner and real estate broker was without consideration, not under seal, revocable at will and that the services sued for were ren-

dered after the revocation of the agency contract. The instrument upon which recovery was sought by the real estate broker in *Des Rivieres v. Sullivan, supra,* was as follows: "Boston, January 18, 1923. I hereby employ W. F. Des Rivieres as exclusive agent to sell my houses at 389 and 391 Salem Street, Medford, Mass., for a price of not less than twelve thousand ($12,000.00) dollars, and I agree to pay him a regular broker's commission, in any event, when a sale is consummated. W. F. Des Rivieres is to do his advertising and showing of the property at his expense. Marie M. Sullivan." The court held that this instrument was an offer on the part of the owner to pay the plaintiff a broker's commission when the contemplated transaction was performed by him, that the defendant's promise was unilateral and without consideration until the performance of the condition and could be revoked at any time before performance by the plaintiff; that the defendant's offer to the plaintiff was to pay the commission when a sale was consummated and before he was entitled to recover he was required to produce a purchaser and bring the transaction to the defendant's notice. It should be observed that the instrument in the *Des Rivieres* case was not under seal, did not purport to grant an exclusive agency to the broker for any definite fixed time and the court held it was revoked when the property was sold by the owner to one whom the plaintiff did not produce. In *Barnard v. Gardner Inv. Corp., supra,* it appeared that on June 27, 1919 the owner executed an instrument reciting that it was given for a consideration of $1 and by its provisions the owner appointed a real estate broker her exclusive agent to make sale of her home. On July 3, 1919 before the broker had done anything thereunder, the owner wrote that she had reconsidered and revoked the instrument. The evidence disclosed that there was no consideration for the execution of the instrument by the owner of the property and the court

held that notwithstanding the recital of a consideration in the agreement, it was proper, inasmuch as the instrument was not under seal, to introduce such evidence, the effect of which was to contradict that recital and that inasmuch as there was in fact no consideration, the owner had a right to revoke the contract in good faith at any time prior to sale. We have examined the other cases cited and relied upon by appellant but the facts in all are distinguishable from the facts in the instant case.

In our opinion this agency agreement gave appellee an exclusive agency to sell the Larsen property from the date thereof until October 1, 1937. There was no issue of fraud, undue influence or any equitable reason advanced by the pleadings or proof why the agreement should not be enforced. This agreement was under seal and must be regarded as having been made upon a sufficient consideration. *Guyer v. Warren*, 175 Ill. 328; *Forthman v. Deters*, 206 Ill. 159; *Adams v. Peabody Coal Co.*, 230 Ill. 469. In speaking of a release of a cause of action under seal, our Supreme Court in *Woodbury v. United States Casualty Co.*, 284 Ill. 227 said: "It is well settled in this State that in an action at law a release under seal by a person of his cause of action is a complete bar unless its execution is shown to have been obtained by fraud. Such a release carries with it the presumption that it was executed for a valuable consideration, and no evidence can be introduced for the purpose of showing that there was no consideration for the giving of the instrument. To do so would be to permit one to deny his receipt of the consideration expressed for the purpose of making void a sealed instrument, which under the law in this State is not permissible in any case. Before such an instrument can be impeached for fraud relating merely to the consideration and not to its execution, resort must be first had to a court of equity to set it aside for such

fraud. (Citing cases.) The same rule does not apply, however, where the suit is on a simple contract or one not under seal.''

Counsel for appellant next insist that the trial court erred in sustaining objections to two questions propounded to Anna Bidinger, a witness produced by appellant. The record discloses that Mrs. Bidinger testified that she was the daughter of Jens Larsen and that he was past 79 years of age on May 10, 1937 and was living with her in Waukegan at that time, that he was quite feeble and his eyesight poor and that on May 11, 1937 she had a telephone conversation with appellee. She was then asked this question: ''What did you say to Mr. Whyte and what did he say to you at that time?'' The court sustained an objection thereto and counsel then asked this question: ''Mrs. Bidinger, what was true with regard to any business transactions of your father, did you from time to time handle them?'' The court also sustained an objection to this question and counsel then continued his further examination of this witness. The record does not disclose that counsel made any statement of what he expected the witness would answer and the record is silent as to what appellant expected to prove by this witness. In his argument in this court, counsel states that the court refused to permit this witness to testify that she acted as agent for her feeble, elderly father and refused to allow her to testify as to her acts and conversations as such agent. What Mrs. Bidinger's answers would have been had the court permitted her to answer does not appear from the record. Had counsel followed the rulings of the trial court by stating what he expected to prove and made an offer of such proof and had an objection then been made to the offer and had the trial court sustained such objection to such offer, the record then would be in condition to present the correctness of the trial court's rulings to this court and we would

then be in a position to pass upon this assignment of error. *Anthony Ittner Brick Co. v. Ashby*, 198 Ill. 562. In *Howard v. Tedford*, 70 Ill. App. 660, it was insisted upon appeal that the trial court erred in excluding answers to two questions asked a witness upon the trial. In its opinion the court said:

"That this ruling was erroneous can not be urged here, for counsel neglected to make known by proffer or otherwise, what he would prove by the answers sought. The trial court could not pass on the relevancy or materiality of the testimony excluded upon the motion for a new trial; nor can this court determine that its exclusion was in any degree prejudicial to appellant." In *Owens v. Guerney*, 241 Ill. App. 477 it appeared that the trial court had sustained an objection to a question propounded to two physicians who were asked whether or not the injuries sustained by the plaintiff were or were not permanent. This court held the trial court should have permitted the questions to be answered but that appellant had not preserved his record so as to justify a reversal inasmuch as no offer was made to show what the answer would be and that in order to predicate error on the refusal to allow a witness to testify, the person making such complaint must show by the record what the testimony of the witness would be if he had been allowed to testify and preserve his objections to the ruling after making such offer of proof. *Rost v. F. H. Noble & Co.*, 232 Ill. App. 430.

Finding no reversible error in this record, the judgment of the circuit court will be affirmed.

*Judgment affirmed.*