Estate of Adolph Karolkiewicz, Deceased.
Chester Karolkiewicz and Stella Powell, Petitioners-
Appellees, v. Chester Kary, Respondent-Appellant.

Gen. No. 52,067.

First District.
October 16, 1968.

CRAVEN, J., dissenting.

Paul F. Sandquist, of Chicago, for appellant.

Ronald S. Davis and Thaddeus L. Kowalski, of Chicago (Ronald S. Davis, of counsel), for appellees.

TRAPP, J.

This is an appeal from a judgment of the Circuit Court ordering the respondent, Chester Kary, to pay to petitioners, Chester Karolkiewicz and Stella Powell, the sum of $16,787.56. This sum was two-thirds of the estate of Adolph Karolkiewicz. Chester Kary was the son and sole heir of decedent. A motion for summary judgment was allowed.

The petitioners alleged that they were the brother and niece of the decedent, that prior to decedent's death they took care of decedent in return for decedent's promise to leave his money to petitioners, that said moneys were deposited in three savings and loan accounts and in a Chicago Park District Benefit, and that decedent gave petitioners his bankbooks covering the said deposits.

The petition further alleged that following the death of Adolph Karolkiewicz, the respondent entered into a written agreement with petitioners that respondent would pay petitioners two-thirds of whatever moneys he would receive from the estate in consideration of petitioners' forbearance with regard to making a claim against the

estate. The agreement, written on stationery of an attorney under date of February 25, 1966, being fifteen days after decedent's death, is as follows:

"We, CHESTER KARY, formerly known as CHESTER KAROLKIEWICZ, CHESTER KAROLKIEWICZ and STELLA POWELL desire to make an agreement whereby the property of ADOLPH KAROLKIEWICZ is to be divided in equal shares among the three of us. The share division is to be made after the following bills are paid:

"1. Illinois Masonic Hospital — $ 156.25
"2. Ambulance charges — 20.00

"The approximate assets of the late Adolph Karolkiewicz are:

"1. Silver Leaf Savings and Loan Account # 52634 . . . . . . . . . . . . . . . . . . . . . $5,881.00
"2. Clyde Savings and Loan Account, # 88041 . . . . . . . . . . . . . . . . . . . . . 9,000.00
"3. Clyde Savings and Loan Account # 85931 . . . . . . . . . . . . . . . . . . . . . 9,000.00
"4. Chicago Park District Benefit — 420.66

"This agreement is to be made pursuant to and in recognition of the care and affection given to Adolph Karolkiewicz by his brother, Chester Karolkiewicz and his niece, Stella Powell.

"We desire Joseph C. Michelotti to represent us as attorney in preparing the agreement and to represent Chester Kary in the matters relating to the estate of Adolph Karolkiewicz, deceased.

S/ CHESTER KAROLKIEWICZ
S/ CHESTER KARY
S/ STELLA POWELL

"I hereby acknowledge receipt of the above described account books and Park District letter.

S/ <u>THERESA L. LEWENDOWSKI</u>
Trustee"

The petition further alleged execution by Chester Kary, on the same date of the following assignment:

"KNOW ALL MEN BY THESE PRESENTS, that I, Chester Kary, formerly known as Chester Karolkiewicz, the undersigned, in consideration of the care and affection bestowed upon my late father, ADOLPH KAROLKIEWICZ, and One ($1.00) Dollar and other good and valuable consideration, hereby assign to THERESA L. LEWENDOWSKI, as Trustee, all my right, title and interest, of every kind and nature, whether as heir or otherwise, in and to the real and personal estate of my father, ADOLPH KAROLKIEWICZ, deceased, and hereby authorize THERESA L. LEWENDOWSKI, as Trustee, or her successor, as administrator of the Estate, to pay over or deliver to CHESTER KAROLKIEWICZ, my uncle, STELLA POWELL, my cousin and myself, each a one-third (⅓) share of all money or property of any kind and description that may be due me as the only heir at law of Adolph Karolkiewicz, deceased. Further it is my intention that the hospital bill and ambulance fees be paid from said sum before any division be made.

"I wish to retain Joseph C. Michelotti as Attorney to take charge of any legal matters in connection with the Estate of Adolph Karolkiewicz, deceased.

"Dated at Chicago, Illinois this 25th day of February A. D. 1966.

S/ <u>CHESTER KARY. (Seal)"</u>

353

The instrument was acknowledged before a notary public as the free and voluntary act of the signer.

The petition further alleged that pursuant to the agreement and the assignment, petitioners turned the bankbooks over to Chester Kary and his agents, but that respondent then expressed his intention not to pay said moneys to petitioners.

Petitioners prayed an order setting aside two-thirds of the funds of the estate pursuant to the agreement, and alternately prayed that two-thirds of the estate funds be set aside for petitioners' benefit because the transaction constituted a consummated gift.

Respondent's answer admitted the existence of the funds, denied that decedent prior to his death promised his money to petitioners in return for their caring for him, and denied that petitioners cared for decedent. It also admitted that petitioners had possession of the bankbooks, but denied that decedent gave them possession.

Respondent admitted signing the two agreements of February 25, 1966, but alleged that they were of no legal effect in giving petitioners any interest in the deposits and benefit.

Basically, the petitioners contend that the pleadings leave no essential issue of fact to be determined, and respondent contends that issues of fact were presented which should have prevented the entry of a summary judgment.

Petitioners base their contention first upon the ground that the allegation in paragraph 4 of the petition that "in consideration of petitioners' forbearance with regard to making a claim upon the estate," respondent promised to pay was not specifically denied by the answer. As previously noted, respondent admitted signing the agreements, but denied that they had the legal effect of giving petitioners an interest in the property. Respondent replies that the agreement purports to rely upon a different

354

consideration, to wit: "care and affection" and not forbearance and the sole matter to be considered is the sufficiency of the recited consideration.

■ While the form of the pleadings is not the most apt, the narrow question whether there was an admission of sufficient forbearance to give rise to a legal claim is otherwise resolved unfavorably to the petitioners. In paragraph 2 of the answer, respondent denied that there was any promise by decedent to give money for services rendered, and also denied that services were rendered. Respondent thus denied the basis for any claim with reference to which forbearance could have any legal operation. This, taken together with respondent's allegation in paragraph 4 that the signing of the papers created no legal interest in petitioners, was sufficient to raise an issue and to prevent a summary judgment based solely upon the allegations of forbearance.

On this issue we are not persuaded by respondent's position that because forbearance is not specifically referred to in the written agreements it is excluded as a basis of liability. It is enough to say that not only do the recitations of consideration fail to state that such is the sole consideration, but the simultaneously executed assignment refers to "other good and valuable consideration."

We have no trial court memorandum which suggests the basis for the summary judgment, but we find contentions, that if concurred in, would support the judgment irrespective of the issue of consideration through forbearance.

Petitioners cite several authorities to the effect that the agreements recite sufficient consideration on their face when they recite (in the assignment): "One ($1.00) Dollar and other good and valuable consideration." Hazle v. Bondy, 173 Ill 302, 50 NE 671, holds that in the absence of testimony regarding the actual consideration, the court cannot assume that with the foregoing language that the

consideration recited was merely nominal. Van Sickle v. Harmeyer, 172 Ill App 218, is to the same effect, and adds "The true consideration may always be shown by parol, even though it is different from that expressed in the deed," (citing Union Mut. Life Ins. Co. v. Kirchoff, 133 Ill 368, 27 NE 91; Worrell v. Forsyth, 141 Ill 22, 30 NE 673, and Howell v. Moores, 127 Ill 67, 19 NE2d 863). Petitioners also cite Klass v. Hallas, 16 Ill2d 161, 157 NE2d 261, that natural love and affection of a father for a daughter is sufficient to support a conveyance, and McFarlane v. Williams, 107 Ill 33, to the effect that where there is a recital of adequate consideration, the burden is upon the person attacking the validity of the consideration to show the inadequacy clearly.

The foregoing points and authorities cited by petitioners all beg the question of the right to a summary judgment on pleadings where the fundamental basis of consideration is denied. The answer denies the existence of the care. No opportunity was afforded to maintain the burden of establishing the lack of care.

Petitioners next cite numerous authorities which, they say, hold that a seal on an instrument imports a consideration. In order to sustain petitioners' claim of a right to a summary judgment, these authorities would have to make the existence of a seal conclusive upon the question of consideration in the absence of proof of fraud in the execution. The cases cited are actions at law where the rule stated by petitioners was frequently employed. Whyte v. Rogers, 303 Ill App 115, 24 NE2d 745, was an exclusive real estate listing for a limited time on definite terms where the consideration was apparent even without the seal involved. Lurie v. Linderman, 11 Ill App2d 76, 136 NE2d 588 (covenant not to sue); Woodbury v. United States Cas. Co., 284 Ill 227, 120 NE 8 (release of an insurance claim); Hartley v. Chicago & A. R. Co., 214 Ill 78, 73 NE 398 (release of injury claim), are claim settlements and not executory contracts. Chamberlain v.

Fernbach, 118 Ill App 145, was a sealed appeal bond which again involves a litigated claim. Gray v. Bloomington & N. Ry., 120 Ill App 159, like Whyte v. Rogers above, show apparent consideration entirely apart from the seal.

■■ In equity a seal has not been considered a bar to inquiry by the court into the consideration. Our courts have quoted Pomeroy repeatedly as follows: "Equity will never enforce an executory agreement unless there was an *actual* valuable consideration; and, unlike the common law, it does not permit a seal to supply the place of a real consideration." 4 Pomeroy's Eq Jur, § 1293. Crandall v. Willig, 166 Ill 233, 46 NE 755; Mills v. Larrance, 186 Ill 635, 58 NE 219; Corbett v. Cronkhite, 239 Ill 9, 87 NE 874. Such authorities also held the parties were not bound by the recitals of consideration.

Since it is known that the appearance of a seal, especially the printed or typed seals, adds no real significance to the solemnity of the instrument, courts have given less weight to the existence or nonexistence of the seal. In People v. Ford, 294 Ill 319, 128 NE 479, Justice Dunn held a statutory requirement of a seal on corporate papers immaterial to the validity of the papers, saying:

"The solemnity of the sealed instrument is purely Pickwickian and no longer represents an idea."

Finally, the General Assembly, in 1951, enacted the following statute regarding seals (Ill Rev Stats, c 30, § 153b):

"The use of private seals on written contracts, deeds, mortgages or any other written instruments or documents heretofore required by law to be sealed, is hereby abolished, but the addition of a private seal to any such instrument or document shall not in any manner affect its force, validity or

357

character, or in any way change the construction thereof."

There is an extensive, though not conclusive, note upon this statute in Illinois Law Forum, 1954, Vol 1, p 113 et seq. (see especially p 118).

Since the sealed instrument in this case is the purported assignment in the form of a trust, and since petitioners seek specific performance thereof, we have no doubt that in any event the equitable jurisdiction of the court has been invoked.

■■■■ We hold that the matter of failure or, as here contended, absence of consideration is open to inquiry. We hold also that the recitation of consideration over the signature of the respondent is prima facie evidence of consideration, and the burden is upon the respondent to prove lack of consideration.

This is a suit against the heir on his contract, and not a suit against the estate. The only theory upon which consideration could be founded is the theory of forbearance in regard to a claim against an estate, which would affect respondent if successful.

The true inquiry is whether there was a substantial basis for a claim which petitioners would have had against the estate of Adolph Karolkiewicz, and did they in fact forbear prosecution of this claim by reason of this agreement. A sine qua non would be proof of such substantial services for the decedent that payment for such services might normally be expected. The alleged promises of the decedent in such case would not be important as binding promises, but could be material on the question whether petitioners' services, if any, were rendered as a family favor, or with the expectation of payment. Since this is a suit against the heir on his contract and not against the estate, we find no bar to petitioners testifying as to the basis for the claim which they say, in effect, they compromised by this agreement.

We find no substantial basis for petitioners' claim that the instruments can be treated as a completed gift from respondent.

The judgment of the Circuit Court is reversed, and the cause is remanded for trial upon the merits in accordance with the suggestions herein.

Reversed and remanded.

SMITH, P. J., concurs.

CRAVEN, J., dissents.

CRAVEN, J., dissenting:

As I view the record in this case, there is no genuine issue of material fact to be determined at a trial upon the merits. The action of the circuit court in granting the motion for summary judgment was, therefore, correct, and I would affirm.

The record in this case establishes that, at the time of the death of the decedent, the petitioners had possession of certain passbooks relating to deposits in various institutions. The respondent wanted the passbooks. The petitioners asserted a claim for their services in caring for the decedent and also asserted a gift to them of the funds represented by the passbooks. This impasse between the parties was resolved by the agreement and assignment, by the terms of which the petitioners would each get one-third of the net estate and the respondent the remaining one-third. This agreement recited the care and affection given the decedent by the petitioners as well as "One ($1.00) Dollar and other good and valuable consideration."

It seems evident that the parties resolved and compromised their conflicting claims and, by the execution of the agreement, the respondent acknowledged the care and affection recited therein. By their petition seeking to enforce the agreement, the petitioners assert the fact

of the agreement, allege the turning over of the pass-books and further assert that there was forbearance by the petitioners with regard to making a claim upon the estate of the decedent. The respondent, by his answer, denies the care; he does not deny the forbearance; he admits the signing of the agreement, but in pure conclusionary language asserts that the agreement is of no legal effect.

The mere assertion that the agreement is of no legal effect does not create a material fact to be ascertained in a trial. Forbearance in asserting a claim, whether legal, equitable, certain or doubtful, provided it is not utterly groundless, is sufficient consideration for a promise made on account of such forbearance. 17 CJS, Contracts, § 103, at 815; 12 ILP, Contracts, § 90, at 249; 78 ALR2d 1410. Thus, as I view this record, the majority opinion remands the case to ascertain a matter that is neither material nor relevant in view of the other considerations established by the record.